**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————

**20 cv 00187 (PAE) (SLC)**

——————————————————————

**GEORGE FAY,**

**Petitioner,**

**- against-**

**ANTHONY J. ANNUCCI, Commissioner,**
**New York State Department of Corrections**
**and Community Supervision; and**
**EARL BELL, Superintendent,**
**Clinton Correctional Facility,**

**Respondents.**

——————————————————————

**PETITIONER'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF PETITION PURSUANT TO**
**28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS**

**MARK M. BAKER-MB5365**
**STUART GOLD**
**BRAFMAN & ASSOCIATES, P.C.**
*Attorneys for Petitioner George Fay*
767 Third Avenue, 26th Floor
New York, New York 10017
212-750-7800

## **Table of Contents**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point I
    The Trial Court Was Certainly Placed on Continuing Notice That
    Counsel Viewed Preclusion of Defense Evidence As a Violation of
    the Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Point II
    In any Event, Because Petitioner Demonstrated Cause For Any
    Default and Prejudice Resulting From the Preclusion of the
    Proffered Expert, Any Discernible Procedural Default Should be
    Ignored; For the Same Reasons, the Merits of Petitioner's Claim
    Warrant the Granting of the Relief Requested . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Table of Authorities

**Supreme Court Cases**

*California v. Trombetta*, 467 U.S. 479 (1984). . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Chambers v. Mississippi*, 410 U.S. 284 (1973) . . . . . . . 3, 4, 7, 10, 12, 15, 17, 20

*Crane v. Kentucky,* 476 U.S. 683 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Crawford v. Washington*, 541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marshall v. Lonberger*, 459 U.S. 422 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Perry v. New Hampshire,*  565 U.S. 228 (2012) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sumner v. Mata*, 449 U.S. 539 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Agurs*, 427 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Hastings*, 461 U.S. 499 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Washington v. Texas,* 388 U.S. 14(1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Federal Cases**

*Frye v. United States*, 293 F. 1013 (D.C. Cir.1923) . . . . . . . . . . . . . . . 15, 16, 17

*Gutierrez v. Smith*, 702 F.3d 103 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . 10

*Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . 11,12

*Johnson v. Strive E. Harlem Emp't Grp.*,
    990 F. Supp. 2d 435 (S.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Justice v. Hoke*, 90 F.3d 43 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lopez v. Greiner*, 323 F.Supp.2d 456 (S.D.N.Y.2004),
    *aff'd substantially for reasons in the decision*
    *of the district court*, 159 Fed. Appx. 320 (2d Cir.2005) . . . . . . . . . . . . . . 5

*Marcic v. Reinauer Transp. Companies*, 397 F.3d 120
    (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mutterperl v. Griffin*, No. 13 CV 6028 (RJD),
    2019 WL 3859400 (E.D.N.Y. Aug. 16, 2019). . . . . . . . . . . . . . . . . . . . . . 17

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1
    (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Redding v. New York State Dep't of Corr.*, No. 17 Cv 7075 (CSJ)
    (CM), 2020 WL 614835 (S.D.N.Y. Feb. 10, 2020). . . . . . . . . . . . . . . . . . 11

*Ronson v. Comm'r of Correction of State of N.Y.* 604 F.2d 176
    (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Scrimo v. Lee*, 935 F.3d 103 (2d Cir. 2019). . . . . . . . . . . . . . . 8, 9, 11, 12, 19, 20

*Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Johnson*, No. 05 CR 1234 DC,
    2013 WL 3892826 (S.D.N.Y. July 29, 2013) (Chin, J.). . . . . . . . . . . . . . 5

*United States v. Groysman,* 766 F.3d 147 (2d Cir. 2014). . . . . . . . . . . . . . . . . . 5

*Ventura v. Meachum*, 957 F.2d 1048 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 6

*Whitaker v. Meachum*, 123 F.3d 714 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . 6

*Wright v. Duncan*, 500 Fed Appx. 36 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . 7

## New York State Cases

*Counihan v. J.H. Werbelovsky's Sons, Inc.*, 5 A.D.2d 80,
    168 N.Y.S.2d 829 (1st Dept. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hoag v. Wright*, 174 N. Y. 36, 47 (1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Matter of Anthony M.*, 63 N.Y.2d 270, 481 N.Y.S.2d 675 (1984) . . . . . . . . . . . 15

*Matter of Lahey v. Kelly*, 71 N.Y.2d 135, 524 N.Y.S.2d 30 (1987) . . . . . . . . . 15

*Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389,
    34 N.E.2d 367 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Bedessie*, 19 N.Y.3d 147, 947 N.Y.S.2d 357 (2012) . . . . . . . . . . . . . 17

*People v. Berk*, 88 N.Y.2d 257, 644 N.Y.S.2d 658 (1996) . . . . . . . . . . . . . . . . . 3

*People v. Chestnut*, 19 N.Y.3d 606, 950 N.Y.S.2d 287 (2012) . . . . . . . . . . . . . 18

*People v. Clarke*, 64 A.D.3d 612, 883 N.Y.S.2d 96
    (2d Dept. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Fay*, 170 A.D.3d 404, 405, 95 N.Y.S.3d 180,
    *lv. denied*, 34 N.Y.3d 930, 133 N.E.3d 457 (2019) . . . . . . . . . . 15, 17, 18

*People v. George O.*, 10 Misc. 3d 462, 807 N.Y.S.2d 825
    (Crim. Ct. N.Y. Co. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People v. Henry*, 95 N.Y.2d 563, 721 N.Y.S.2d 577 (2000) . . . . . . . . . . . . . . . . 7

*People v. Kello*, 96 N.Y.2d 740, 723 N.Y.S.2d 111 (2001) . . . . . . . . . . . . . . . . . 7

*People v. Middleton*, 54 N.Y.2d 42, 444 N.Y.S.2d 581 (1981) . . . . . . . . . . . . . 15

*People v. Oddone*, 22 N.Y.3d 369, 980 N.Y.S.2d 912 (2013) . . . . . . . . . . . 15-16

*People v. Robinson*, 89 N.Y.2d 648, 657 N.Y.S.2d 575 (1997) . . . . . . . . . . . . . 3

*People v. Wernick*, 89 N.Y.2d 111, 651 N.Y.S.2d 392 (1996) . . . . . . . . . . . . . 15

*People v. Wesley*, 83 N.Y.2d 417, 611 N.Y.S.2d 97 (1994) . . . . . . . . . . . . . . . 15

## <u>United States Constitution</u>

Amendment VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 9, 13, 19

## <u>Federal Statutes</u>

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 17

## <u>New York Statutes</u>

NYPL § 130.35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

NYPL § 130.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 12**

NYPL § 130.65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

## <u>Miscellaneous</u>

1 McCormick, Evidence § 203, at 873-874 (4th ed.1992) . . . . . . . . . . . . . . . . . 15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

**20 cv 00187 (PAE) (SLC)**

_____

**GEORGE FAY,**

**Petitioner,**

**- against-**

**ANTHONY J. ANNUCCI, Commissioner,**
**New York State Department of Corrections**
**and Community Supervision; and**
**EARL BELL, Superintendent,**
**Clinton Correctional Facility,**

**Respondents.**

_____

## <u>Preliminary Statement</u>

This memorandum of law is respectfully submitted in reply to the Respondents' memorandum of law in opposition ("Resp Memo") to the petition of **George Fay** ("Petitioner"), whereby he seeks a writ of _habeas corpus_, pursuant to 28 U.S.C. § 2254, with respect to a judgment of the Supreme Court of the State of New York, County of New York (Jackson J. and a jury), rendered on the 17th day of April, 2018. Such judgment convicted Petitioner of the crimes of Rape in the First Degree (NYPL § 130.35(2)), Criminal Sexual Act in the First Degree (NYPL § 130.50(2)), and Sexual Abuse in the First Degree (NYPL § 130.65(2)) and sentenced him to concurrent terms of imprisonment aggregating

ten years. The term of incarceration is to be followed by five years of post-release supervision.

Not all of Respondents' points are addressed in this Reply. With respect to those that are not discussed, Petitioner maintains that his principal submission adequately anticipated and appropriately disposed of such remaining contentions. Accordingly, any further argument herein would only invite unnecessary repetition.

## Point I

### The Trial Court Was Certainly Placed on Continuing Notice That Counsel Viewed Preclusion of Defense Evidence As a Violation of the Sixth Amendment

Petitioner has claimed in his application that, on this record, "[n]othing would have been gained by requiring him to explicitly state the right to present a defense or some other magic words." Petitioner's memorandum of law ("Pet Memo") at p. 18 (citing *Ronson v. Comm'r of Correction of State of N.Y.* 604 F.2d 176, 178 (2d Cir. 1979); *Singleton v. Lefkowitz*, 583 F.2d 618, 623 (2d Cir. 1978); *People v. Berk*, 88 N.Y.2d 257, 266, 644 N.Y.S.2d 658, 662 (1996)) (internal quotation marks omitted). Reliance was then placed on claimed violations of *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."); *see also Washington v. Texas,* 388 U.S. 14, 19 (1967); *People v. Robinson*, 89 N.Y.2d 648, 652, 657 N.Y.S.2d 575 (1997).

Answering this claim, Respondent now states that:

> However, a criminal defendant in New York's courts cannot, through an initial constitutional objection to the exclusion of evidence of another sort, thereby automatically bootstrap a constitutional claim to any general objection he makes thereafter to the exclusion of other evidence. Petitioner cites no authority for such a rule, and respondent is aware of none. Indeed, trial counsel's earlier preservation of a federal claim with respect to the evidence only highlights his awareness that he was required to do the same with respect to the expert testimony.

-3-

Resp Memo at 26-27 (footnote omitted).

Although Respondents are probably correctly in stating that there is no specific authority for counsel's exception as a violation of *Chambers*, there certainly exists consistent authority for reading the "record as a whole." In this case, therefore, by his repeated references to *Chambers*, trial counsel emphasized that the right to present a defense, the right to place witnesses on the stand, and the right to compulsory process are constitutional imperatives and that the court's rulings were inconsistent therewith. That is because, as trial counsel noted, "*Chambers versus Mississippi* stands for the proposition that constitutional rights often can super[s]ede local evidentiary rules, such as hearsay." Pet Memo at 20 (quoting Tr. 432-33). Surely, counsel's resulting exception regarding the preclusion of his proffered expert was understood by the trial judge to be encompassed by the same rubric. *See People v. George O.*, 10 Misc. 3d 462, 807 N.Y.S.2d 825 (Crim. Ct. N.Y. Co. 2005).

In a parallel regard, it has long been the rule, for example, when allegations of ineffective assistance of counsel are raised, as with prosecutorial claims of harmless error, that the record as a whole is considered. *See e.g. United States v. Hastings*, 461 U.S. 499, 508 (1974) (harmless error based on whole record); *Johnson v. Strive E. Harlem Emp't Grp.*, 990 F. Supp. 2d 435, 450 (S.D.N.Y. 2014) ("Where there has been an objection, a new trial is warranted

if the Court's evidentiary ruling was clearly prejudicial to the outcome of the trial, taking into account the record as a whole."); *Lopez v. Greiner*, 323 F.Supp.2d 456, 480 (S.D.N.Y. 2004) (trial counsel not ineffective where "the record as a whole" demonstrates that counsel "pursued a coherent, if ultimately unsuccessful, defense strategy"), *aff'd substantially for reasons in the decision of the district court*, 159 Fed. Appx. 320 (2d Cir.2005); *United States v. Johnson*, No. 05 CR 1234 DC, 2013 WL 3892826, at *3 (S.D.N.Y. July 29, 2013) (Chin, J.) ("First, the record as a whole demonstrates that counsel was not ineffective."); *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 124 (2d Cir. 2005) ("A party is generally entitled to a new trial if the district court committed errors that were a 'clear abuse of discretion' that were 'clearly prejudicial to the outcome of the trial.' 'Prejudice is measured by assessing the error in light of the record as a whole.'" (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir.1996)).

        The Court of Appeals has even employed "whole record" analysis when determining whether to apply plain error to unpreserved appellate claims. *See e.g. United States v. Groysman,* 766 F.3d 147, 155 (2d Cir. 2014) ("In the present case, given the numerous errors conceded by the government and the fact that not all of them were the subject of objections by Groysman at trial, we elect to bypass harmless-error analysis and to conduct only plain-error analysis

notwithstanding that the burden under that analysis is on Groysman, because we conclude, on the present record as a whole, that she meets the burden. The first two criteria for relief under the test for plain error are clearly met. There were errors and they were plain.").

That is likewise the rule when determining whether a state court's findings of facts are entitled to deference in a 2254 proceeding. *See e.g Whitaker v. Meachum*, 123 F.3d 714, 715, n. 1 (2d Cir. 1997) ("A state court's findings of fact are entitled to a 'presumption of correctness' on federal collateral review unless those findings are not 'fairly supported by the record' *as a whole*, or unless one of the other exceptions specified by Congress under 28 U.S.C. § 2254(d) applies."); *Ventura v. Meachum*, 957 F.2d 1048, 1054 (2d Cir. 1992) ("Under 28 U.S.C. § 2254(d), federal courts conducting a habeas proceeding must give a 'presumption of correctness' to 'a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction,' unless the conditions for one of the seven listed exceptions are met or unless the state court findings are not 'fairly supported' by the record as a whole") (citing *Sumner v. Mata*, 449 U.S. 539, 550 (1981)). *See also Marshall v. Lonberger*, 459 U.S. 422, 432 (1983) ("One of the eight exceptions to this presumption of correctness, and the one relied upon by the Court of Appeals in this case, is where the federal habeas court, reviewing the state court record offered to support the factual

-6-

finding, "on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record") (quoting former 28 U.S.C. § 2254(d)(8)).

New York courts hold the same. *See e.g. People v. Clarke*, 64 A.D.3d 612, 614, 883 N.Y.S.2d 96, 99 (2d Dept. 2009) ("Upon viewing the record as a whole, we conclude that the defendant was not denied the effective assistance of counsel" (citing *Strickland v. Washington*, 466 U.S. 668 (1984) and *People v. Henry*, 95 N.Y.2d 563, 566, 721 N.Y.S.2d 577 (2000)).

It follows that the whole record should likewise control when a habeas court considers whether a state judge had been placed on requisite notice that the repeated preclusion of evidence amounted, in sum, to violations of the Sixth Amendment under *Chambers*. That is what happened here.

Respondent's reliance on the point addressed in *Wright v. Duncan*, 500 Fed Appx. 36, 39 (2d Cir. 2012) was preempted in Petitioner's principal papers. *See* Pet Memo at 15-17. The error complained of in *Wright*, just as in *People v. Kello*, 96 N.Y.2d 740, 743, 723 N.Y.S.2d 111 (2001), was that exculpatory hearsay was precluded in violation of due process. But, as addressed earlier, "not all hearsay implicates the Sixth Amendment's core concerns. *Crawford v. Washington*, 541 U.S. 36, 51 (2004)." Pet Memo at 16. Therefore, to the extent the Constitution is implicated with respect to the exclusion of the

specific hearsay referenced, it is certainly necessary that the trial judge be so advised that such is the basis of the complaint.

On the other hand, as argued in Pet Memo at 23-31, the federal and New York courts have certainly addressed the constitutional aspects of issues presented when they were implicit in the complained of errors. As therein elaborated, "[w]hen a claim, therefore, inherently implicates the alleged abridgment of an obvious constitutional right, the Courts have not been so rigid in requiring a constitutional provision to be specifically enunciated." *Id.*, at 24.

Respondents find Petitioner's reliance on *Scrimo v. Lee*, 935 F.3d 103 (2d Cir. 2019) to be "puzzling." Resp Memo at p. 30. As even Respondents note, however, the Court of Appeals therein ruled that the trial judge "should have understood" Scrimo's argument. But that is because, at the time of such preclusion, it does not appear to have been specifically raised in so many words as a violation of that petitioner's right to present a defense. Otherwise, there would have been no need to determine what the court should have easily understood; rather it would have been clear cut, absent the need for any such speculation.

Indeed, as earlier explained, with respect to *Scrimo*, "[t]here is no indication in the Court of Appeals' decision or the parties' briefs that the trial attorney had ever couched his request to call such witnesses as embodied in

Scrimo's Sixth Amendment right to compulsory process and to present his defense." Pet Memo at 34. Rather, given the importance of the precluded expert witness to the defense, the Court of Appeals "easily conclude[d] that the trial court was sufficiently apprised of the role of the witnesses in Scrimo's defense such that the constitutional implications of their exclusion were clear." 935 F.3d at 114. Since, in this case, that was certainly done, for all the reasons stated in Petitioner's principal memorandum, a finding of procedural default should not be made.

## Point II

**In any Event, Because Petitioner Demonstrated Cause For Any Default and Prejudice Resulting From the Preclusion of the Proffered Expert, Any Discernible Procedural Default Should be Ignored; For the Same Reasons, the Merits of Petitioner's Claim Warrant the Granting of the Relief Requested**

Citing *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012), Petitioner earlier argued that,

> [w]ith all his repeated references to *Chambers v. Mississippi*, certainly counsel understandably believed that he had injected the relevant constitutional issues into the case with the trial judge. And, given the facts of this case, and the reality that, where the awakened but highly intoxicated complainant actually thought Petitioner was, in reality, her boyfriend, Jack Slye, it is clear that Petitioner had a basis to believe that she was willing and knowingly participating, making the exclusion of his professed expert all the more prejudicial.

Pet Memo at 37. n.7.

In addition to the "cause" for any procedural default owing to trial counsel's belief, as expressed in Point I, *ante,* that he had adequately preserved the record by repeated references to *Chambers*, the prejudice to Petitioner resulting from the trial court's preclusion of the expert -- whom, as shown in the reargument motion at the Appellate Division, the prosecutor had even interviewed before trial commenced -- is self-evident. In that interview, the expert presumably explained the nature of his anticipated testimony, thereby undermining the Appellate Division's finding of untimeliness. As a result, that

finding amounted to an "abuse of discretion." The "presumption of correctness," Resp Memo at 40, therefore, has been rebutted.

As the facts demonstrate, Petitioner had every reason to believe that the complainant was initiating intimacies with him, which, in his own drunken state, he obviously misinterpreted. The jury, however, obviously did not credit Petitioner's testimony. But had it been made privy to what the expert had to say -- *viz.*, that an extremely intoxicated person, such as the complainant, could believe herself to be asleep while appearing to another to be awake -- it could only have bolstered Petitioner's credibility. What could possibly have been more relevant to Petitioner's defense? *See* Resp Memo at 42–43. Thus, because the answer to Respondents' own query as to possible relevance is in the affirmative, it cannot be said that the preclusion of the proposed expert testimony -- again viewing the whole record -- was harmless. *See* Resp Memo at 36 ("If evidence was wrongfully excluded under state law, the court asks whether the omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist. *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996)" (citing *United States v. Agurs*, 427 U.S. 97, 112 (1976); and *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006); and *Redding v. New York State Dep't of Corr.*, No. 17CIV7075 (CSJ) (CM), 2020 WL 614835 (S.D.N.Y. Feb. 10, 2020)).

In the words of the *Scrimo* Court, if the criterion for a determination

of the merits is whether "potentially exculpatory evidence was erroneously excluded," a habeas court " 'must look to whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist.' " 935 F.3d at 115 (quoting *Hawkins*, 460 F.3d at 244). Upon such a finding, there is no question but that prejudice arises from the exclusion of such expert testimony on this record. Accordingly, given *Chambers*, such preclusion amounted to a situation under AEDPA, where

> the state court's application of clearly established federal law was objectively unreasonable, or...it fail[ed] to extend a principle of clearly established law to situations which that principle should have, in reason, governed.

*Scrimo*, 935 F.3d at 114.

Petitioner disagrees with Respondents' assessment that there is a deficiency in this case because "[t]he petition here is devoid of any allegations of 'new evidence' tending to show that petitioner is actually innocent of his crimes." Resp Memo at 31. To the contrary, the expert testimony offered would have supported Petitioner's innocence by demonstrating that he had not intended to take advantage of an apparently sleeping complainant whom he believed had been awake, contrary to the requirements of the charging statutes. *See* NYPL §§ 130.35(2), 130.50(2), and 130.05. Thus, given the source of the expert proof offered, *i.e.*, someone with the credentials that would have bolstered Petitioner's credibility, it could have raised a reasonable doubt that otherwise did not exist.

Disagreeing, Respondents state:

> Even if that state law ruling were incorrect, preclusion did not violate petitioner's constitutional right to present a defense because Dr. Thorpe's testimony would not have created reasonable doubt. The jury heard petitioner's defense through his own testimony, as well as other evidence highlighted by the defense throughout trial. Given the many implausible aspects of petitioner's account, there is little, if any, possibility that the jury would have credited the defense even if the reliability of Dr. Thorpe's proffered testimony been properly established and the evidence received. In any event, there is nothing in the record showing that Dr. Thorpe's proffered testimony was supported by scientific evidence or that the expert was qualified to render an opinion on this subject.

Resp Memo at 34. Respondents later add that

> preclusion of Dr. Thorpe's testimony did not prevent petitioner from presenting his defense that he believed his sexual activity with S.D. was consensual. Dr. Thorpe's testimony, even if demonstrated to be sufficiently reliable to be admitted and accepted by the jury, would merely have made it theoretically possible for the jury to credit petitioner's testimony without having to conclude that S.D. was lying. But that possibility would not amount to reasonable doubt in light of petitioner's testimony, which was in many respects implausible and replete with incredible claims.

*Id.*, at 45.

That, however, is not for Respondents to say. In fact, S.D. is not accused of lying. Rather, it is claimed that a mutual misunderstanding existed. Thus, expert testimony would have bolstered Petitioner's own perceptions and given plausibility to his testimony as consistent with his understanding. The claimed constitutional deprivation in its preclusion from the jury, therefore, cannot be so cavalierly eschewed. As Petitioner further noted in his brief before

the Appellate Division after recounting the evidence:

> More likely, [the complainant], perceiving Defendant to have been
> Slye in her fatigued and intoxicated state, and feeling a renewed
> amorousness, returned Defendant's kisses. But that was his
> *response*, only after she had initiated such activity, in her semi-
> conscious state, by placing what she obviously thought was Slye's
> hand across her chest. Then, one thing obviously led to another, and
> she ultimately moved down on him, at her own initiative, to which
> Defendant was obviously receptive.

Brief for Appellant at p. 36. "On the other hand," argued Petitioner,

> were the Court to accept the verdict, it would need to believe that
> this peaceful, truthful and well regarded young man, with a sterling
> reputation, after having stayed awake until 3:00 a.m., following a
> full night of drinking and smoking marijuana, jumped into bed with
> his best friend *and* his best friend's girlfriend, singularly bent on
> taking advantage of her, while believing they were both fast asleep
> and would *never* find out. It is not plausible.

*Id.* at 38.

So, proving Petitioner's perceptions by establishing at least the
possibility they were accurate became crucial for the defense. Still, as noted in
Petitioner's principal memorandum, the prosecution would have had full license
to challenge the expert's opinions in furtherance of its efforts to demonstrate
they lacked merit. But, as earlier explained, under New York's evidentiary rules,
such opinions by an expert were clearly admissible. *See* Pet Memo at 46 ("novel
scientific evidence may be admitted without any hearing at all by the trial court
Moreover, the modern trend in the law of evidence has been away from imposing
a special test on scientific evidence and toward using the "traditional standards

of relevancy and the need for expertise.")

(citing *People v. Wesley*, 83 N.Y.2d 417, 426, 611 N.Y.S.2d 97, 102 (1994) (citing *Matter of Lahey v. Kelly*, 71 N.Y.2d 135, 524 N.Y.S.2d 30 (1987) and *People v. Middleton*, 54 N.Y.2d 42, 444 N.Y.S.2d 581 (1981)) and quoting 1 McCormick, Evidence § 203, at 873-874 (4th ed. 1992)).

Consequently, and especially here, where the prosecution had a pre-trial opportunity to interview the expert and thereby learn what he had to say, the Appellate Division's conclusion that Petitioner's request would have required a lengthy mid-trial continuance for a *Frye* hearing (*see Frye v. United States*, 293 F. 1013 (D.C. Cir.1923))[1] and for the People to obtain their own expert is insupportable. Likewise did the Appellate Division err by not revisiting its holding, on the reargument motion, that the "untimeliness of the request by itself thus warranted denial." *People v. Fay*, 170 A.D.3d 404, 405, 95 N.Y.S.3d 180, 182, *lv. denied*, 34 N.Y.3d 930, 133 N.E.3d 457 (2019) (citing *Matter of Anthony M.*, 63 N.Y.2d 270, 283–84, 481 N.Y.S.2d 675 (1984)). These rulings not only ignore controlling New York Court of Appeals jurisprudence; more importantly, they amount to an unreasonable application of *Chambers*.

Respondents take issue with Petitioner's claim that *People v.*

---

[1] The *Frye* test is followed in New York when necessary. *See People v. Wernick*, 89 N.Y.2d 111, 116, 651 N.Y.S.2d 392, 395 (1996).

*Oddone*, 22 N.Y.3d 369, 980 N.Y.S.2d 912 (2013), prohibits the preclusion of an expert's testimony where testimony is based on "personal experience -- meaning what he had observed, heard and read about particular cases." Petitioner has maintained that "such evidence is not barred by *Frye*." Pet Memo at 46. Respondents now state that "unlike in Oddone, petitioner offered Dr. Thorpe's testimony as a scientific theory of S.D.'s behavior as described by petitioner, not an expert opinion." Resp Memo at 42. But there is nothing in the proffered testimony that necessarily supports this as the sole conclusion. Rather, counsel stated:

> We previously provided a CV to Ms. Sullivan [the prosecutor]. He is an expert in sleep disorders and pharmacological effects that alcohol intake consumption can have on a person on sleep. The specifics of it would be that there are situations where alcohol intake consumption . . .and intoxication have such an effect on a person that they can be actually be sleeping but participating in physical activities that makes them appear to be awake and conscious.

Tr. 983. He added that the prosecutor, who, again, had earlier interviewed the expert, had been made

> aware of the expertise of Dr. Thorpe and potential for expert testimony in this area, and I specifically used the term the pharmacological effects of alcohol and potentially other substances because I was not aware if there was going to be  any testimony about any ingestion of narcotics during the--well obviously there was not --but this was not on an e-mail but in a telephone conversation.

Tr. 984-985.

-16-

Given the fact that New York law clearly would have allowed such testimony had it been based on the expert's personal conclusions, instead of what would have been opined to be true to a reasonable degree of medical certainty, it was overly hasty for the court to preclude the expert on *Frye* grounds -- thereby certainly acting objectively unreasonably, given the holdings in *Chambers*, *Crane v. Kentucky,* 476 U.S. 683 (1986) and *California v. Trombetta*, 467 U.S. 479 (1984).[2] There simply would have been no need for a "'lengthy midtrial continuance.'" Resp Memo, at 43, quoting *People v. Fay*, *supra* 170 A.D.3d at 405, 95 N.Y.S.3d 180.

In light of *Oddone*, and the presumption that a judge knows the law, the trial court ruled mighty hastily without seeking to determine whether the proposed testimony was based on personal opinion rather than empirical study in an area warranting a *Frye* hearing. Had the court done so, it would have

---

[2] Petitioner submits that were he to convince the Court that the precluded evidence was the result of an unreasonable application of *Chambers* he will have met his statutory burden. 28 U.S.C. § 2254(1).Thus, it is not necessary for him to specifically identify a "Supreme Court case recognizing a right to introduce expert testimony of the type offered by petitioner at trial." Resp Memo at p. 48. Respondents' cited case of *Mutterperl v. Griffin*, No. 13 CV 6028 (RJD), 2019 WL 3859400, at *8 (E.D.N.Y. Aug. 16, 2019) is inapposite as having failed the initial test since, as a matter of New York law, the proposed expert testimony regarding false confessions was earlier held by the New York Court of Appeals as lying strictly in the trial court's discretion. *See People v. Bedessie*, 19 N.Y.3d 147, 947 N.Y.S.2d 357 (2012). And certainly Petitioner did not have any analogous opportunity enjoyed by Bedessie, whereby that defendant was able to litigate his involuntariness claim in a pre-trial suppression hearing.

defeated Respondents' and the Appellate Division's claim for the need of such a hearing, both procedurally and substantively on the merits. Resp Memo at 40-42. *See e.g. People v. Chestnut*, 19 N.Y.3d 606, 611, 950 N.Y.S.2d 287 (2012) ("In this case, where the facts demonstrate that defendant not only met the specific objection requirement (by repeatedly apprising the court of the error), but provided more information than was required, and where there is a judge, who is not only presumed to know the law, but has been apprised of and ruled on the specific issue numerous times, the preservation requirement is met."). Neither did the court even allow an inquiry into the issue of qualification which Respondent espouses. *See* Resp Memo at 37-38.[3]

        Under such circumstances, Respondents wrongly suggest that the

------------------------------------------------------------

[3] Respondents state that "Petitioner never identified any studies that Dr. Thorpe had completed, or articles in any scientific journals on the topic of alcohol causing people 'to engage unconsciously in physical activity while appearing to be awake, and to wake up unaware of the activity.'" Resp Memo at 41 (quoting *People v. Fay*, 170 A.D.3d at 405). But that puts the cart before the horse since the witness, waiting outside, was not even allowed to take the stand, whereupon his credentials would need to be heard before he could be so qualified. After all, while the judge determines the qualifications in the first instance, "[t]he extent of the expert's qualifications is always a proper subject for the jury on the question of the weight to be given to his testimony." *Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389, 398, 34 N.E.2d 367 (1941) (citing *Hoag v. Wright*, 174 N. Y. 36, 47 (1903)).*See also Counihan v. J.H. Werbelovsky's Sons, Inc.*, 5 A.D.2d 80, 84, 168 N.Y.S.2d 829 (1st Dept. 1957) ("Since the jury had the duty of evaluating the testimony of the expert, plaintiff was entitled to have the jury know his material professional qualifications, and a concession by defendant could not inhibit that right. Of course, this does not mean that a trial court, in the exercise of discretion, would not be justified in curtailing an unnecessarily protracted qualification of an expert witness.") (citations omitted).

"evidence was correctly excluded pursuant to a state evidentiary rule." Resp Memo at 36, 37-42. Rather, because the exclusion of such testimony undermined the defense's ability to bolster Petitioner's credibility, and thereby impeded the defense's ability to establish a reasonable doubt, let alone his innocence, the prejudice is incalculable.

The need in such instance for an accused's seemingly dissembled testimony to be rehabilitated by expert testimony is self-evident. Hence, it cannot be so precipitously rejected where the sharply contested issue of fact, especially from the standpoint of the Sixth Amendment, deserves to be fully litigated before a jury. After all, in a similar situation, by rejecting the need for pre-trial litigation of an allegedly suggestive eye witness identification, the Supreme Court held in *Perry v. New Hampshire*, that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen the evidence for reliability before allowing the jury to assess its creditworthiness." 565 U.S. 228, 245 (2012). That conclusion "rests, in large part, on [the Supreme Court's] recognition that the jury, not the judge, traditionally determines the reliability of evidence." *Id.* Likewise, it certainly is not within Respondents' province to conclude how a jury, which alone determines credibility, would have ruled had Petitioner's expert been allowed to testify.

All things considered, this petition should be granted because it seeks the same relief as did the petitioner in *Scrimo*. Respondent's assertion that "*Scrimo* cannot independently provide a basis for habeas relief because circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' and, accordingly, 'cannot form the basis for habeas relief under AEDPA[,]'" Resp Memo at p. 49 (citations and internal quotation marks omitted), misses the point. Petitioner does not rely on *Scrimo* as the case which was unreasonably applied. Rather, Petitioner relies on *Scrimo* because *Scrimo itself* relied on the same Supreme Court cases which does Petitioner. It is those cases which were, in turn, therein held to have been unreasonably applied. *See Scrimo* 935 F.3d at 112 ("We conclude that Scrimo's constitutional claim is based on clearly established federal law as determined by the Supreme Court, and that the claim was fairly presented to the trial court. The Supreme Court has clearly and repeatedly held that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense, including the opportunity to call witnesses to aid in that defense: '[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense.'") (quoting *Chambers v. Mississippi*, 410 U.S. at 302, and citing *Crane v. Kentucky* and *California v. Trombetta*.

-20-

## <u>Conclusion</u>

**For all the Foregoing Reasons, as Well as for Those Reasons
Earlier Stated, The Petition for a Writ of Habeas Corpus
Should be Granted and a New Trial Should Be Ordered**

Dated:      New York, New York
            August 9, 2020

                    Respectfully submitted,

                      <u>/s/ Mark M. Baker</u>

                      **MARK M. BAKER** - MB5365
                      **STUART GOLD**
                      **BRAFMAN & ASSOCIATES, P.C.**
                      *Attorneys for Petitioner*
                      *George Fay*
                      767 Third Avenue, 26th Floor
                      New York, New York 10017
                      212-750-7800