THE BAKER LAW FIRM FOR
CRIMINAL APPEALS, PLLC
4705 Henry Hudson Parkway, 4M/L
Riverdale, Bronx, New York 10471
Tel. (917) 740-3822
Fax. (718) 543-5140

**MARK M. BAKER**  mark@mmbcriminalappeals.com
**Attorney and Counselor at Law**  mmbcriminalappeals.com

April 24, 2023

**Via ECF**
Hon. Paul G. Engelmayer
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

      Re: *George Fay v. Anthony F. Annucci*
           20 Cv. 187 (PGE) (SLC)

Dear Judge Engelmayer

      As I indicated in my letter application of March 6th, Petitioner and his father, an attorney residing and practicing in the British Virgin Islands where Petitioner is a citizen, have given significant consideration to their options at this juncture. Given the essence of the Magistrate's report and recommendation (R&R), which was predicated in its entirety on the failures of trial counsel, they have elected to now proceed in Supreme Court, New York County, in order to litigate a motion pursuant to New York Criminal Procedure Law § 440.10(1)(h). Accordingly, for the following reasons, it is respectfully requested, pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), that this matter be held in abeyance pending those further proceedings.

Hon. Paul G. Engelmayer
April 24, 2023

## Procedural History

The operative dates are as follows: Following a jury verdict convicting him of the crimes of Rape in the First Degree (PL §130.35[2]), Criminal Sexual Act in the First Degree (PL §130.50[2]), and Sexual Abuse in the First Degree (PL §130.65[2]) Petitioner was sentenced on April 17, 2018, to concurrent terms of imprisonment of ten years, followed by five years of Post-Release Supervision.

By order of the Appellate Division, First Department, entered March 5, 2019, the judgment was affirmed. Thereafter, a certificate denying leave to appeal to the New York Court of Appeals was entered on August 20, 2019. Consequently, following the expiration of the ensuing ninety days, the judgment became final on November 18, 2019. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("The judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires.")

Less than two months later, on January 9, 2020, believing he had indeed exhausted state remedies with regard to the issue of the deprivation of his Sixth Amendment right to present a defense, Petitioner filed the instant petition. Obviously, this was not dilatory since, had there been no filing at that time, Petitioner would still have been able to file a timely petition, and thereby commence the proceeding, until the expiration of ten more months.

## The State Appeal

Petitioner argued on appeal that because both he and the complainant had been highly intoxicated, they had each misread the other and hence, they had been acting under a mutual mistake. Thus, Petitioner maintained that the record demonstrated his belief that the complainant had been awake, while the complainant mistakenly

Hon. Paul G. Engelmayer
April 24, 2023

believed, in her own fatigued and intoxicated state, that Petitioner was actually her boyfriend -- who, in reality, was fast asleep in the same bed on her other side.

Accordingly, because it severely impaired Petitioner's need to support his testimony, it was argued on appeal, *inter alia*, that the trial court had undermined his Sixth Amendment and state constitutional rights to present a defense by precluding trial counsel Daniel Bibb's proffer of the testimony of a readily available expert. It was stated that such witness would have opined, given the level of the complainant's inebriation and fatigue, that she could well have so acted by appearing to Petitioner to have been awake, while she had actually believed and so testified that she had been asleep.

It was argued, therefore, that, as his final witness at trial, defense counsel sought to call Dr. Michael Thorpe, an expert in "sleep disorders" and "the pharmacological effects that alcohol can have on sleep and behavior." Counsel, who stated that he had earlier provided Dr. Thorpe's CV to the prosecutor, explained that the witness would testify that, in his opinion, people "ca[n] be intoxicated.., but they think they are sleeping but they can physically participate in physical activities while thinking-- the only way I can say it is while thinking they're asleep." If accepted by the jury, therefore, such testimony would have created a reasonable doubt as to Petitioner's guilt and thereby help to convince it that he had truthfully perceived the complainant's willingness to engage in sex, even though she believed she had been asleep. Thus, when the court asked "[s]o someone can actually be intoxicated, but specifically participate in physical activity AND [sic] not be aware -- is that what it is -- not be aware they're participating[?], counsel answered in the affirmative.

The prosecutor, however, protested that it was the first she heard of such testimony. Counsel then rejoined that he had informed the prosecutor about the witness at least several weeks earlier, even if

Hon. Paul G. Engelmayer
April 24, 2023

he had not been "one hundred percent specific." Petitioner's brief noted, therefore, that, in fact, three weeks earlier, prior to jury selection, counsel had stated on the record that Dr. Thorpe (then spelled "Thorpy") would be a defense witness. Nevertheless, still insisting she had not been given earlier notice, the prosecutor successfully moved to preclude such testimony. Also challenged were the witness's credentials.

In the trial court's view, "[t]here would have to be proof that it's scientifically reliable; otherwise, any expert could 'testify' on any matter." Also stated by that court -- absent any statutory reference -- was that counsel had not made a prior written application. Counsel responded, however, that the prosecutor had known about the specific witness for a while and had not earlier objected. Nonetheless, the court precluded the testimony based on "inadequate notice to both the prosecution, to the Court to get a ruling whether there is indeed expert testimony that's permissible in the scientific community along the lines of whatever."

The Appellate Division ultimately sided with the trial judge and also rejected this claim. Rather, it reasoned that the matter had not been appropriately preserved by trial counsel:

> The court providently exercised its discretion in denying defendant's request, made late in the trial, to call an expert on sleep disorders, who would have testified about the effects of alcohol on sleep and behavior, including that consumption of alcohol can cause persons to engage unconsciously in physical activity while appearing to be awake, and to wake up unaware of the activity. To the extent the record establishes that the People had any advance notice of the content of this testimony, that notice was inadequate under the circumstances. This request would have required a lengthy midtrial continuance for a *Frye* hearing (*see Frye v. United States*, 293 F. 1013 [D.C. Cir.1923] ) and for the

Hon. Paul G. Engelmayer
April 24, 2023

> People to obtain their own expert. Accordingly, the untimeliness of the request by itself thus warranted denial (see *Matter of Anthony M.*, 63 N.Y.2d 270, 283–84, 481 N.Y.S.2d 675, 471 N.E.2d 447 [1984] ).
>
> In any event, defendant failed to offer any scientific basis for the proposed testimony (*see generally People v. Bennett*, 79 N.Y.2d 464, 473, 583 N.Y.S.2d 825, 593 N.E.2d 279 [1992] ). Defendant did not preserve his contention that Frye is inapplicable because he only sought to introduce his expert's opinions based on personal experience, rather than explanation of a scientific theory, and we decline to review it in the interest of justice. As an alternative holding, we find that there is no evidence that the proposed expert had any experience with the proffered theory.
>
> Because defendant never asserted that, as a matter of constitutional law, he was entitled to introduce the expert testimony, his request to do so only raised questions of state evidentiary law and trial management (*see People v. Lane*, 7 N.Y.3d 888, 889, 826 N.Y.S.2d 599, 860 N.E.2d 61 [2006]; *see also Smith v. Duncan*, 411 F.3d 340, 348–349 [2d Cir.2005] ). We likewise decline to review defendant's unpreserved constitutional claim in the interest of justice. As an alternative holding, we reject it on the merits (*see Crane v. Kentucky*, 476 U.S. 683, 689–690, 106 S.Ct. 2142, 90 L.Ed.2d 636 [1986] ).

*People v. Fay*, 170 A.D.3d 404, 405–06, 95 N.Y.S.3d 180, 182 (1st Dept. 2019).[1] As noted, leave to appeal was later denied by Associate Judge

---

[1] A motion seeking reargument, based on a newly found transcript, demonstrating that the prosecutor had even interviewed the proposed expert prior to trial, was denied without comment.

Hon. Paul G. Engelmayer
April 24, 2023

Michael Garcia of the New York Court of Appeals on August 20, 2019.

## The Magistrate's Report and Recommendation

In a comprehensive analysis, the Magistrate agreed with the Appellate Division. Thus, while accepting that the issue had been appropriately exhausted, the R&R essentially holds that trial counsel repeatedly failed to make a proper record in furtherance of the federal constitutional right claimed to have been undermined. The matter, therefore, was held to have been procedurally defaulted owing to trial counsel's deficiencies. Additionally, given the limited record made in state court, the Magistrate also rejected Petitioner's claim on the merits.

It follows that Petitioner's only remedy to correct any procedural default is to bring the contemplated motion to vacate judgment, pursuant to CPL § 440.10(1)(h) in Supreme Court, New York County, raising the claim of trial counsel's inexplicable failure to have satisfied the Magistrate's several points. Based on the result of any such motion, both the procedural default and any shortcomings in Petitioner's argument on the merits, certainly given the rather bizarre facts in this case, can be satisfactorily addressed.

## The Need For This Application

The instant motion to hold this matter in abeyance, rather than dismissing the petition, is essential in order for Petitioner to preserve any recourse to federal review in the event he is unsuccessful in New York. Specifically, in *Duncan v. Walker*, 533 U.S. 167, 181 (2001), the Supreme Court noted "that [28 U.S.C.] § 2244(d)(2) does not toll the limitation period during the pendency of a federal habeas petition. . . . We hold that an application for federal habeas corpus review is not an application for State post-conviction or other collateral review within the meaning of 28 U.S.C. § 2244(d)(2)."

Hon. Paul G. Engelmayer
April 24, 2023

   This being so, were the petition now to be dismissed, even without prejudice, Petitioner's ultimate ability to pursue any necessary § 2254 remedy, after satisfying the issue of procedural default, would be precluded. The fact is, based on *Duncan*, because the filing of his petition on January 9, 2020, did not have any tolling effect, the ability to bring a new, preserved and exhausted claim before the federal court would have ended long ago, given the three years taken by the Magistrate -- despite Petitioner's repeated applications for a decision -- to issue her report.

   In light of these realities, in addition to noting the potential equitable tolling of the petition during that period, a motion of this nature was even invited by two members of the majority in *Duncan*. Specifically, Justice Stevens wrote "separately to add two observations regarding the equitable powers of the federal courts, which are unaffected by today's decision construing a single provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214." *Duncan* 533 U.S. at 182 (Stevens, J., joined by Souter, J., concurring). As Justice Stevens explained:

> First, although the Court's pre-AEDPA decision in *Rose v. Lundy*, 455 U.S. 509, 522 (1982), prescribed the dismissal of federal habeas corpus petitions containing unexhausted claims, in our post-AEDPA world *there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies.*[2]

---

[2] Justice Souter agreed that "nothing bars a district court from retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for equitable tolling could present a serious issue on facts different from those before us." 533 U.S. at 182 (Souter, J., concurring).

-7-

Hon. Paul G. Engelmayer
April 24, 2023

> Indeed, there is every reason to do so when AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims, see 28 U.S.C. § 2254(b)(2) (1994 ed., Supp. V), and *when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1–year limitations period.* Second, despite the Court's suggestion that tolling the limitations period for a first federal habeas petition would undermine the "purposes" of AEDPA, see *ante*, at 2127–2129, neither the Court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity. The Court's opinion does not address a federal court's ability to toll the limitations period apart from § 2244(d)(2). See *ante*, at 2129. Furthermore, a federal court might very well conclude that tolling is appropriate based on the reasonable belief that Congress could not have intended to bar federal habeas review for petitioners who invoke the court's jurisdiction within the 1–year interval prescribed by AEDPA.

*Id.* at 182-83; emphasis added.[3]

---

[3] *See also Rodriguez v. Bennett*, 303 F.3d 435, 438 (2d Cir. 2002) ("[T]he fact that § 2244(d)(2) does not cause exclusion of the federal petition's time of pendency does not necessarily exclude the possibility of discretionary tolling on equitable grounds. Even though a petition is not entitled to the automatic tolling mandated by § 2244(d)(2), under appropriate circumstances the petitioner may be entitled to equitable tolling.").

Hon. Paul G. Engelmayer
April 24, 2023

## The Merits of This Application

Substantively, the Magistrate further concluded that "[e]ven if Fay's Sixth Amendment claim were not procedurally defaulted, I would also respectfully recommend that the claim be denied on the merits." R & R at 38. The fact is, however, all the concerns expressed by the Magistrate in furtherance of that conclusion can be properly addressed in an appropriate motion pursuant to CPL § 440.10(1)(h), based on the ineffectiveness of trial counsel.

In a parallel regard, the appropriateness of a motion to hold a mixed petition in abeyance pending exhaustion of state remedies was weighed in *Rhines v. Weber,* where the criteria were held to be three-fold. Specifically,

> it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.[4]

---

[4] To be sure, the instant petition was not "mixed," and the contemplated CPL 440.10(1) motion will raise a new claim of ineffective assistance of counsel. But given the thrust of the R&R, Petitioner has little choice but to so proceed while maintaining a legitimate and reasonable need to preserve future access to this habeas court. Because, therefore, this motion is not "plainly meritless," *Brims v. Collado*, No. 18CV6973 (KMK) (PED), 2022 WL 17669950, at *2 (S.D.N.Y. Dec. 14, 2022), it should be addressed on the merits and, unlike in *Brims*, granted in this Court's discretion. Indeed, in similar circumstances, where I had initially also argued unsuccessfully that an issue had been preserved, only to have same rejected in an R&R, I obtained a stay from Chief Judge Swain in *Chodakowski v. Annucci, et al.*, 19 cv 00248 (LTS) (DE # 27), along with the requirement to issue semi-annual progress reports, in furtherance of a later filed CPL § 440.10 motion. I undertake the same commitment to this Court.

544 U.S. at 278.

      Here, exhaustion was already found, and given the timely filings, herein, there was certainly no dilatoriness. Moreover, Petitioner certainly argued in good faith that there was no procedural default and that the New York courts had acted objectively unreasonably with respect to established Supreme Court precedent. An earlier motion, based on allegations of ineffective assistance of counsel, would have been inconsistent with this claim on the merits.

      The Magistrate, of course disagreed. But to the extent that she explained why the petition should further be dismissed on the merits, the Magistrate pointed to deficiencies that can and will all be addressed in the contemplated motion to vacate judgment, given her very reasoning -- all of which was premised on the failures of trial counsel.

      Specifically, in accepting the "propriety of the trial court's evidentiary ruling," the Magistrate relied on several distinct factors: First, the Magistrate concluded that

> while the Court acknowledges that, shortly before trial, Bibb listed Dr. Thorpe as a defense witness and, during trial, provided Dr. Thorpe's CV to the ADA, who interviewed him (ECF Nos. 1-6 at 20; 21-2 at 122; see Jan. 17 Tr. 2; Jan. 24 Tr. 568; Jan. 30 Tr. 984–85), the First Department nevertheless concluded that this "advance notice . . . was inadequate under the circumstances." Fay, 170 A.D.3d at 405.

R & R at 42.

      Noting that she was required to presume the correctness of the factual conclusion of the state courts, the Magistrate specified the

Hon. Paul G. Engelmayer
April 24, 2023

failure of trial counsel's untimely proffer. She thus recalled his limited statements that:

> (1) "Dr. [Thorpe]'s area of expertise is not just sleep disorder, it is pharmacological [e]ffects on sleep [of] alcohol, drugs, things like that[]"; and
>
> (2) Dr. Thorpe was "an expert in sleep disorders and pharm[a]cological effects that alcohol intake consumption can have on a person [a]sleep. The specifics of it would be that there are situations where alcohol intake consumption and intoxication have such an effect on a person that they can be actually be sleeping but participating in physical activities that make[] them appear to be awake and conscious.(ECF No. 1-6 at 6, 20; Jan. 17 Tr. 2; Jan. 30 Tr. 983).

*Id.*, at 42-43.

She then noted that "[a]t the same time, however, Bibb had inconsistently disavowed any reliance on "a sleepwalking defense[,]" and admitted that there had "been no reports" on this topic—whether from Dr. Thorpe or anyone else. (ECF No. 1-6 at 20; Jan. 17 Tr. 2)." *Id.* at 43.

The following points, in the Magistrate's view, supported this conclusion:

> Fay does not—and cannot—dispute that he never requested a hearing or made a written application to the trial court concerning Dr. Thorpe's testimony. (See Jan. 30 Tr. 986). As Respondent correctly observes, "by the time [Fay] attempted to call Dr. Thorpe as a witness—after his last witness had testified, at the end of a two-week trial—he still had not

-11-

Hon. Paul G. Engelmayer
April 24, 2023

informed the [ADA] much less the [trial] court, the substance of Dr. Thorpe's proposed testimony." (ECF No. 20 at 39). Given Bibb's ambiguous and shifting descriptions of Dr. Thorpe's testimony both before and during trial, Fay has not shown by clear and convincing evidence that the First Department erred in concluding that Fay did not give adequate notice of Dr. Thorpe's testimony and that the trial court did not abuse its discretion in not granting a continuance of the nearly complete trial.

Second, the Magistrate concluded that "even setting aside the timing of Fay's request to call Dr. Thorpe, Fay did not meet his burden of showing that Dr. Thorpe's opinions—whatever their substance—were "generally accepted in the relevant scientific community[.]" *People v. Bennett*, 79 N.Y.2d 464, 472 (1992)." R&R at 43.

Third, given her review of the trial testimony supporting the people's case, the Magistrate determined that " '[e]ven if the trial court's preclusion of [Fay]'s proffered expert was erroneous, it did not rise to the level of constitutional error because, "in the context of this case, the admission of the testimony would not have created an otherwise non-existent reasonable doubt about [Fay]'s guilt.' *Redding*, 2020 WL 614835, at *16[5] (quoting *Schriver*, 255 F.3d at 60[6])." *Id. at 44.*

Fourth, the Magistrate found that "to the extent that Fay contends that the *Frye* standard was inapplicable because Dr. Thorpe would offer only his 'personal opinions,' (ECF No. 10 at 56–58), the First Department found this argument also to have been unpreserved. *Fay*, 170 A.D.3d at 405–06." *Id.* According to the Magistrate,

---

[5] *Redding v. N.Y.S. Dep't of Corr.*, No. 17 Civ. 7075 (CS) (JCM), 2020 WL 614835, at *15 (S.D.N.Y. Feb. 10, 2020)

[6] *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001).

> at no point before or during the trial did Fay establish that Dr. Thorpe had any personal experience with people drinking alcohol and then engaging in physical activities while asleep—or thinking they were asleep—let alone sufficient personal experience on which the trial court could have concluded that Dr. Thorpe's testimony would aid the jury at all. This argument therefore does not alter the Court's conclusion that Dr. Thorpe's testimony was properly excluded under New York evidentiary standards.

R&R, at 46.

Fifth, the Magistrate distinguished *Scrimo v. Lee*, 935 F.3d 103, 112 (2d Cir. 2019), a case relied upon by Petitioner. She noted that in that decision, "the jury heard other arguments and evidence concerning whether [the complainant] was 'physically helpless.'" Hence, in the Magistrate's view, unlike the accused in *Scrimo*, Petitioner was not deprived of his constitutional right to present a complete defense. R&R at 46-47

Finally in rejecting any arbitrariness attending the trial court's rulings, the Magistrate again laid the fault at trial counsel's doorstep:

> While the trial court's analysis of Fay's request to call Dr. Thorpe was not particularly lengthy, that is largely the result of Fay's [read: counsel's] decisions to delay a proffer until after he and all his other witnesses had testified and to refrain from providing the trial court with any formal motion or other substantive materials regarding Dr. Thorpe or any legal authority supporting his testimony. (Jan. 30 Tr. 983–87). The trial court's evidentiary ruling (see § II.B.1.c.iii, supra), was tailored to the circumstances of Dr. Thorpe's testimony, and did not amount to a wholesale preclusion of Fay from introducing any evidence or otherwise

Hon. Paul G. Engelmayer
April 24, 2023

vigorously contesting whether S.D. was physically helpless.

R&R at 47-48.

In sum, the Magistrate's report and recommendation is premised in its entirety on the shortcomings of trial counsel. It is respectfully submitted that *Rhines v. Weber* and the court's inherent discretion supports this motion to hold this petition in abeyance pending the litigation in Supreme Court, New York County, of Petitioner's anticipated motion to vacate judgment pursuant to CPL 440.10(1)(h), where each and every one of these deficiencies can be advanced as the basis for granting a new trial.[7]

Should the court deny this application, it is requested that we be allowed an additional 20 days in which to file objections to the R&R.

Respectfully submitted,

s/ Mark M. Baker
MARK M. BAKER

cc:   Nikki Kowalski, Esq.
      Via ECF

---

[7] I have counseled Petitioner and his father that it would be in Petitioner's interest to engage new counsel for purposes of the contemplated CPL § 440.10 motion.