UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

GEORGE FAY,                                            :

                         Petitioner,

                                 :          No. 20-cv-00187-PAE-SLC

       - against -

                                 :

ANTHONY F. ANNUCCI, Commissioner, New
York State Department of Corrections and              :
Community Supervision, and EARL BELL,
Superintendent, Clinton Correctional Facility,       :

                     Respondents.        :
-----------------------------------------------------------------x

**PETITIONER GEORGE FAY'S RULE 72 OBJECTIONS TO
MAGISTRATE JUDGE CAVE'S REPORT & RECOMMENDATION
ENTERED JUNE 16, 2023 (DOC. 51)**

Joel B. Rudin
Jacob Loup
Law Offices of Joel B. Rudin, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
(212) 980-2968 (fax)
jbrudin@rudinlaw.com

*Attorneys for Petitioner George Fay*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| GEORGE FAY, | : |
| Petitioner, | : |
| - against - | : |
| | : |
| ANTHONY F. ANNUCCI, Commissioner, New York State Department of Corrections and Community Supervision, and EARL BELL, Superintendent, Clinton Correctional Facility, | : |
| Respondents. | : |

**DECLARATION OF
JOEL B. RUDIN IN SUPPORT
OF RULE 72 OBJECTIONS**

No. 20-cv-00187-PAE-SLC

------------------------------------------------------------------x

        JOEL B. RUDIN, ESQ., declares pursuant to 28 U.S.C. § 1746, under penalty of perjury,

that the following is true and correct:

        1.      I am counsel for the petitioner, George Fay, am fully familiar with the facts and

circumstances of this case, and make this declaration in support of Mr. Fay's objections, under

Federal Rule of Civil Procedure 72, to the Report and Recommendation of the Honorable Sarah

L. Cave, which recommended denying Fay's motion for leave to amend his habeas petition and

for a stay of the habeas proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005). *See* Doc. 51.

        2.      Mr. Fay objects to the following factual and legal conclusions by Judge Cave:

        a.      That the failure of Fay's post-conviction counsel to raise trial counsel's
                ineffectiveness in a state-court CPL § 440.10 motion before coming to
                federal court does not establish "good cause" for Fay's failure to exhaust
                that claim, and thus he does not satisfy the first *Rhines* requirement for
                staying the proceedings;

        b.      That post-conviction counsel's unreasonable omissions cannot establish
                "good cause" under *Rhines* unless they are raised and exhausted in a
                standalone ineffectiveness claim based upon *Strickland v. Washington*,
                466 U.S. 668 (1984);

        c.      That a claim alleging trial counsel's ineffectiveness would be "plainly
                meritless" and thus does not satisfy the second *Rhines* requirement; and

    d.      That amending Fay's habeas petition to add a claim alleging trial counsel's ineffectiveness would be futile because the above two *Rhines* factors were not satisfied and thus a *Rhines* stay is not warranted.

3.     Fay does *not* object to Judge Cave's findings:

    a.      That Fay's proposed amendment alleging trial counsel's ineffectiveness relates back to his habeas petition and thus is timely; and

    b.      That Fay has not been deliberately dilatory in making the present motion and so he satisfies the third *Rhines* requirement.

4.     The relevant factual and procedural background is as follows.

## A.    The alleged rape and the prosecution of Mr. Fay

5.     This case arises from an allegation by the complainant, SD, that Mr. Fay raped her while she slept. The relevant testimony from Fay's January 2018 trial was as follows.

6.     In summer 2016, George Fay, then 21 years old, was living in the Manhattan apartment of a family friend. On the night of July 8, Fay and his friends Jack Slye, Don Sobell, and Sam Reardon hung out at the apartment, drinking alcohol. From there they went to a bar downtown, where they drank more alcohol. At the bar, Jack Slye met up with SD, a young woman with whom he had an ongoing sexual relationship. After midnight, Slye and SD went back to the apartment where Fay was staying, had sex in Fay's bed, and fell asleep there. Fay and Sobell returned to the apartment a couple hours later.

7.     SD testified that after having sex with Slye and falling asleep, the next thing she remembered was:

> feeling something put in my mouth and feeling someone's hand behind my head. I thought I was dreaming. But I also remember thinking what is Jack [Slye] doing. My eyes aren't open. So I was just—I didn't understand what was happening.
>
> And from there it's a little hazy in terms of timeframe, but I know what woke me up and when I realized it wasn't a dream is when I felt someone put their—they're having sex with me, and that's when I really was awake and when I opened my eyes I thought it was Jack, who else would it have

> been, and I looked and I saw his face and I realized it wasn't Jack. And I
> looked to my left and Jack was sleeping and that's when I realized what
> was happening and I jumped out.

Tr. 188-89.

8.      Fay, taking the stand in his own defense, testified that he wanted to sleep in his

own bed, which Slye and SD were sleeping in, so he climbed in and fell asleep. He was awoken

by SD grabbing his arm and pulling it to her chest. In response, he kissed her right shoulder, and

they started making out. SD pulled down his sweatpants and performed oral sex. He then

performed oral sex on her. Eventually, he asked if she wanted to have intercourse, and she said

yes. When he had trouble penetrating her, she agreed he should get lubricant. He did, and they

began having intercourse. After 30 to 60 seconds, however, SD turned her head and looked at

Slye, and her demeanor changed. She told Fay he "should probably go." Tr. 806-11. A short time

later, SD left, the police came back, and Fay was arrested.

9.      Two days before opening statements, the prosecutor noted she had learned that

the defense intended to call an expert named "Dr. Michael Thorby [sic]" and asked if the expert

was going to testify as part of a "sleepwalking defense."[1] Defense counsel said "No," and that

Dr. Thorpy's "area of expertise [wa]s not just sleep disorder, it is pharmacological [e]ffects on

sleep[,] alcohol, drugs, things like that." On January 30, 2018, the seventh day of trial, after

defense counsel had presented several witnesses, he indicated that he wished to call Dr. Thorpy

as "an expert in sleep disorders and pharm[a]cological effects that alcohol intake consumption

can have on a person on sleep." Tr. 983. Specifically, Thorpy would testify "that there are

situations where alcohol intake consumption and intoxication have such an effect on a person

---

[1] The existing record is so devoid of information about the defense's proposed expert that his name is not spelled correctly anywhere. My office has spoken with him, as discussed below, and confirmed that his name is Dr. Michael Thorpy.

that they can be actually . . . sleeping but participating in physical activities that makes them appear to be awake and conscious." *Id.* This was the entirety of counsel's proffer; he did not provide any report from Dr. Thorpy, nor any scientific literature or case law to support his vague offer of proof.

10.     The prosecutor indicated that she had received Dr. Thorpy's CV a week earlier, but that "[t]his [wa]s the first" she had heard of this theory, despite asking defense counsel, via telephone and email, "what the opinions the expert would be testifying to and what the basis of those opinions were." Tr. 984-85. The court refused to let the defense call Dr. Thorpy, ruling that the defense had provided insufficient notice of Thorpy's expected testimony, thus preventing a timely ruling on whether there was a legitimate scientific basis for the testimony. Tr. 985-86.

11.     As discussed in more detail below, Dr. Thorpy's testimony would have supported a powerful defense theory that SD had, as she testified, honestly perceived herself to be asleep during the sexual encounter but that she had, as Fay testified, acted in a manner that indicated to Fay that she was awake, thus negating Fay's *mens rea*. With the expert testimony precluded, however, the defense was left to make the difficult argument to the jury that it should disbelieve SD because she had knowingly had sex with Fay but then quickly come to "regret[]" it and therefore falsely accused him of rape. Tr. 1051. The jury was not convinced and convicted Fay.

**B.     Direct appeal in state court**

12.     For his direct appeal, Fay retained new counsel, Mark Baker. Mr. Baker argued, *inter alia*, that by precluding Dr. Thorpy's testimony, the trial court violated Fay's Sixth Amendment right to present a defense. He contended that the issue was adequately preserved for appeal. However, the Appellate Division rejected this argument, finding that trial counsel had not preserved this issue because he "never asserted that, as a matter of constitutional law, he was

entitled to introduce the expert testimony." *People v. Fay*, 170 A.D.3d 404, 406 (1st Dep't 2019). In the alternative, the court summarily rejected the Sixth Amendment claim on the merits, based on the bare record trial counsel had made. *Id.* The appeals court also held, as a matter of state procedural law, that the trial court had "providently exercised its discretion" in refusing to let Dr. Thorpy testify after the defense provided such late notice and "failed to offer any scientific basis for the proposed testimony." *Id.* at 405.

## C.     Initial proceedings in federal court

13.     Mr. Baker, continuing on as post-conviction counsel, could have brought a CPL § 440.10 motion to raise and exhaust the constitutional claim that trial counsel's inadequate expert proffer and inadequate objection to the state trial court's ruling excluding the expert constituted ineffectiveness.[2] However, he instead chose to go directly to federal court and, on the existing state-court record, to file a habeas corpus petition making the Sixth Amendment claim that the Appellate Division had found unpreserved. *See* Doc. 1 at ECF pp. 49-50 (the "Petition") (filed January 9, 2020). The Petition was fully briefed as of August 9, 2020. *See* Doc. 23. Since a state prisoner has the right to file only one habeas petition, this approach essentially abandoned Fay's constitutionally-based ineffectiveness claim and meant Fay's only chance to succeed was to convince a federal court, under AEDPA's deferential review standard, that no reasonable jurist could have reached the state court's decision.

14.     On February 14, 2023, Judge Cave issued a Report and Recommendation recommending that the Court deny the Petition. Doc. 31 (the "First R&R"). Deferring to the state

---

[2] He would have been required to raise such an ineffectiveness claim in a 440 motion rather than on direct appeal, since the claim would have relied on non-record material, such as evidence about the proffer trial counsel *should* have made and trial counsel's reasons (or lack thereof) for not making an adequate proffer or objection. *See People v. Zappulla*, 103 A.D.3d 759, 759 (2d Dep't 2013).

court's ruling, Judge Cave concluded that trial counsel's failure to preserve the Sixth Amendment claim rendered it procedurally defaulted. *Id.* at 26-38. She found it "[n]otabl[e]" that Mr. Baker did "not claim [trial counsel]'s representation was so constitutionally deficient as to be 'an external factor' providing cause to excuse the default." *Id.* at 37 n.15 (internal quotation marks omitted).

15.     Judge Cave also addressed the merits of the Sixth Amendment claim, concluding that Fay could not establish, under AEDPA's demanding standard, either (1) that trial counsel's meager, tardy proffer was wrongly rejected or (2) that Dr. Thorpy's proposed testimony—which is not in the record in any detail because of counsel's deficient proffer—would have changed the trial's outcome. *Id.* at 38-48. On the latter point, Judge Cave properly noted that the Sixth Amendment claim could succeed only if admitting the excluded testimony would have "created an otherwise non-existent reasonable doubt." *Id.* at 44. However, her factual analysis focused on the distinct, immaterial question of whether the evidence against Fay was legally sufficient, *id.* at 44-45, concluding that, "when viewed in the light most favorable to the People, there was legally sufficient evidence that the victim was physically helpless," and "[t]herefore, . . . admission of the proposed expert testimony would not have created an otherwise non-existent reasonable doubt," *id.* at 45 (internal quotation marks omitted).

**D.     Mr. Fay retains my firm, which files the present motion to amend the petition and stay the proceedings while Mr. Fay returns to state court to exhaust his claim that trial counsel was ineffective**

16.     On April 24, 2023, Mr. Baker filed a motion seeking to stay the habeas proceedings while Mr. Fay pursued a post-conviction motion in state court alleging the ineffectiveness of trial counsel. *See* Doc. 38. Respondent opposed the motion. *See* Doc. 40. On May 4, 2023, before the Court ruled on the motion, Mr. Baker sought additional time for my firm

to be substituted as counsel and to file on Mr. Fay's behalf a motion to amend the Petition. *See* Doc. 44. Fay retained my firm. The Court granted us permission to file such a motion but limited us to a three-page, single-spaced letter. *See* Doc. 45.

17.     My office promptly spoke with Dr. Thorpy and trial counsel and researched sleep disorders relevant to Fay's case. Dr. Thorpy told an associate in my firm, Jacob Loup, that the recognized phenomenon of "sexsomnia" could reconcile the apparently conflicting testimony of SD and Fay, because it would explain how SD could have honestly perceived herself to be asleep when the sexual acts occurred, as she testified, even while Fay honestly perceived her to be awake and consenting, as he testified.

18.     Our research readily uncovered significant scientific and legal support for admitting evidence about sexsomnia in court—none of which had been presented by trial counsel. The 2013 *DSM-5* entry for "Parasomnias"— "disorders characterized by abnormal behavioral" during sleep "or sleep-wake transitions"—includes diagnoses for a "'specialized' form[] of sleepwalking" called "sexsomnia or sleep sex," in which "varying degrees of sexual activity (e.g., masturbation, fondling, groping, sexual intercourse) occur as complex behaviors arising from sleep without conscious awareness." *DSM-5* at 399-401, https://perma.cc/3N3W-U45N. In New York, inclusion of a diagnosis in the *DSM* "signals its general acceptance by the psychiatric community" and thus the admissibility at trial of expert testimony on that subject. *In re State of New York v. Jerome A.*, 172 A.D.3d 446, 447 (1st Dep't 2019).

19.     Published studies describe episodes of sexsomnia as being "initiated abruptly"; when the patients awake, they typically have limited recall of the sexual episodes and are "upset when they become aware of them." Brian J. Holoyda, et al., *Forensic Evaluation of Sexsomnia*, J. Am. Acad. Psychiatry Law, 2021, at 2, https://perma.cc/5SB8-XEZ7. Further, according to the

*DSM-5*, "[s]edative use" and "sleep deprivation" can trigger sexsomnia episodes. *DSM-5*, *supra*, at 401. Other sources specifically identify "alcohol" as a "[t]rigger[] for sexsomnic episodes." Holoyda et al., at 2.; *accord* Douglas N. Peters & Robert G. Rubin, *How We Handled a Sexsomnia Case*, The Champion, April 2013 (accessible on Westlaw at 37-APR Champion 18); *People v. Hurtado*, No. B228634, 2012 WL 827066, at *2 (Cal. Ct. App. Mar. 13, 2012).

20.     We also discovered that expert testimony about sexsomnia has repeatedly been used in criminal proceedings—and had been before Fay's 2018 trial. *See, e.g.*, Peters & Rubin, *How We Handled a Sexsomnia Case*, *supra*; *Hurtado*, 2012 WL 827066, at *2; *United States v. Clugston*, No. 201500326, 2017 WL 411118, at *6 (N-M. Ct. Crim. App. Jan. 31, 2017). In more than one case, including in New York, defendants have been acquitted after arguing that they committed sexual acts while in a state of sexsomnia. *See* Jaclyn Weiner & Rebecca Rosenberg, *Man found not guilty after blaming sleepwalking for sex attack*, N.Y. Post, https://perma.cc/SV8F-QAA6; Peters & Rubin, *How We Handled a Sexsomnia Case*, *supra*. Another defendant was acquitted on the theory advanced here: that *the complainant* was having a sexsomnic episode when the allegedly criminal sexual act occurred. *See* Emma Ailes, *'Claims I had sexsomnia destroyed my rape case,'* BBC, Oct. 5, 2022, https://perma.cc/Z7FK-UN2N.

21.     Limited to the state-court record that trial counsel had made, Judge Cave did not have before her any of the above literature—let alone Dr. Thorpy's own opinion showing how his testimony would have reconciled the apparently conflicting testimony of SD and Fay—when she concluded in the First R&R that Dr. Thorpy's testimony would not have changed the outcome of the trial.

22.     Dr. Thorpy told my associate that, while he spoke briefly with Fay's trial lawyer, that lawyer never asked him to review any materials from the case, never retained him, and never

prepared him to testify. Dr. Thorpy said that he never spoke with any other lawyer after that. When my associate spoke with trial counsel, counsel did not dispute Dr. Thorpy's memory that counsel never had shown him any case materials, retained him, or prepared him to testify at trial. Trial counsel had no reasonable explanation for not requesting a *Frye* hearing or presenting to the trial court any scientific literature or case law in support of Dr. Thorpy's testimony.

23.     On May 22, 2023, in the three pages allowed, I sought leave to amend the Petition to add a claim that Fay's trial counsel had been ineffective by failing to timely seek to admit Dr. Thorpy's testimony, failing to present evidence of the general acceptance of sexsomnia and alcohol's role in that phenomenon, and failing to show why the testimony was necessary to Fay's defense (the "IAC Claim"). Doc. 48 at 2. I cited most of the above scientific and legal literature on sexsomnia and described the testimony Dr. Thorpy would have given—the first time any lawyer had presented such important information to any court on Mr. Fay's behalf. *Id.*

24.     I argued that the proceedings should be stayed under the criteria set forth in *Rhines v. Weber*, 544 U.S. 269 (2005), in which the Supreme Court held that a federal court may stay a habeas proceeding while the petitioner returns to state court to exhaust unexhausted claims, as long as "(1) good cause exists for the petitioner's failure to exhaust . . . ; (2) the unexhausted claims are not plainly meritless[;] and (3) the petitioner has not engaged in intentionally dilatory tactics." *Inoa v. Smith*, No. 16CV2708, 2018 WL 4109102, at *1 (S.D.N.Y. Aug. 29, 2018) (Cott, M.J.) (quoting *Clarke v. Griffin*, No. 13-CV-4812, 2016 WL 206476, at *3 (S.D.N.Y. Jan. 14, 2016) (McCarthy, M.J.); and citing *Rhines*, 544 U.S. at 277-78).

25.     I argued that the unexhausted IAC Claim was not "plainly meritless," because Dr. Thorpy's expert testimony "likely would have led to a better trial outcome, as it explained both SD's testimony that she didn't consciously consent and Fay's testimony that she appeared awake

and consenting." Doc. 48 at 3. I argued that we had shown "good cause" for Fay's failure to previously raise and exhaust the IAC Claim—namely, post-conviction counsel's unreasonable failure to raise that claim in a CPL § 440.10 motion in state court before filing the only habeas petition his client was entitled to in federal court. *Id.* I also noted that Respondent had previously conceded that Fay had not engaged in deliberately dilatory tactics. *Id.* (citing Doc. 40 at 4).

**E.    Judge Cave recommends that the Court deny the motion**

26.    Respondent opposed our motion, and the Court referred the motion to Judge Cave. *See* Docs. 49-50. She issued a 30-page Report and Recommendation recommending the Court deny the motion. *See* Doc. 51 (the "Second R&R").

27.    Judge Cave first concluded that Fay's proposed IAC Claim "relate[s] back to the Petition" and is thus "timely," because his arguments that "trial counsel's decisions (or omissions) caused, or at least contributed to, the preclusion of Dr. Thorp[y]'s testimony" are "connected to the same operative facts as those already asserted" in Fay's Sixth Amendment claim about the improper preclusion of the expert testimony. *Id.* at 20. Fay, of course, agrees with this conclusion.

28.    Judge Cave then concluded, however, that Fay's proposed amendment would be futile because Fay has not met two of the three criteria for a stay under *Rhines*. *Id.* at 20-30.

29.    Judge Cave concluded that "the third *Rhines* factor" was satisfied because "Respondent concedes that Fay's 'sequencing of his attacks on his conviction does not appear to have been a deliberately dilatory tactic.'" *Id.* at 21 (quoting Doc. 40 at 4). Fay does not object to this conclusion.

30.    However, Judge Cave concluded that *Rhines*'s "good cause" requirement was not satisfied, for two main reasons. *Id.* at 21-29. First, she contended that post-conviction counsel's

unreasonable omissions cannot establish good cause unless they are raised and exhausted in a standalone ineffectiveness claim based upon *Strickland v. Washington*, 466 U.S. 668 (1984). For this, she cited one case, Judge Koeltl's decision in *Vasquez v. Parrott*, 397 F. Supp. 2d 452, 464 (S.D.N.Y. 2005). Doc. 51 at 15, 23.

31.     Second, although our argument in favor of good cause is that post-conviction counsel acted unreasonably by failing to raise the IAC Claim *in a 440 motion* after the Appellate Division denied Fay's direct appeal, Judge Cave spent several pages analyzing why Fay could not show that Mr. Baker was ineffective for omitting the IAC Claim from Fay's *direct appeal*. *Id.* at 23-25. Using the highly deferential standard for ineffectiveness of *appellate counsel*, she concluded that the first *Strickland* prong was not met because, on direct appeal, Mr. Baker had not "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* at 24 (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). She did not analyze whether post-conviction counsel had acted unreasonably, *after* the Appellate Division had already deemed the Sixth Amendment claim unpreserved, in filing a federal habeas petition before first raising trial counsel's ineffectiveness in a 440 motion.

32.     Judge Cave then concluded that the second *Strickland* prong was not met, writing, "Because the First Department rejected the theory on which Dr. Thorpe's testimony would have been based, Fay cannot show that an ineffective assistance claim based on trial counsel's allegedly deficient proffer would have succeeded on direct appeal." *Id.* at 26. As discussed further in the accompanying memorandum of law, however, Judge Cave did not, in reaching this conclusion, address whether the state courts' decisions might have been different had they considered the information we have presented—but which is absent from the trial record—about sexsomnia and Dr. Thorpy's proposed testimony.

33.     Finally, Judge Cave held that the final *Rhines* requirement was not satisfied because the IAC Claim was "plainly meritless for the reasons set forth above"—i.e., for the same reasons she had determined, on the limited record made by trial counsel, that Dr. Thorpy's testimony would not have changed the outcome of Fay's trial. *Id.* at 29.

34.     On June 20, 2023, the Court granted Fay's request to have until July 7, 2023, to file the present objections to the Second R&R under Federal Rule of Civil Procedure 72. *See* Doc. 53.

WHEREFORE, for the reasons set forth above and in the accompanying memorandum of law, the Court should reject the objected-to portions of the Second R&R, grant Fay's motion for leave to amend the Petition to add the IAC Claim and for an order staying the habeas proceeding and holding the Petition in abeyance while Fay exhausts the IAC Claim in a CPL § 440.10 motion in state court, and grant such other and further relief as would be just and proper or in the interest of justice.

/s/
JOEL B. RUDIN, ESQ.

Dated:     July 7, 2023
           New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

GEORGE FAY,                                          :

                         Petitioner,

                                   :          No. 20-cv-00187-PAE-SLC

          - against -

                                   :

ANTHONY F. ANNUCCI, Commissioner, New
York State Department of Corrections and            :
Community Supervision, and EARL BELL,
Superintendent, Clinton Correctional Facility,      :

                     Respondents.       :
-----------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONER GEORGE FAY'S RULE 72 OBJECTIONS TO
## MAGISTRATE JUDGE CAVE'S REPORT & RECOMMENDATION
## ENTERED JUNE 16, 2023 (DOC. 51)

Joel B. Rudin
Jacob Loup
Law Offices of Joel B. Rudin, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
(212) 980-2968 (fax)
jbrudin@rudinlaw.com

*Attorneys for Petitioner George Fay*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

STANDARD OF REVIEW .......................................................................................... 1

> This Court should review the Second R&R *de novo*, because denying Mr. Fay's
> motion would forever bar federal review of the unexhausted IAC Claim, and also
> because the Second R&R fails to address our main arguments .......................................... 1

ARGUMENT ................................................................................................................ 4

> Because the IAC Claim relates back to the Petition and is not "plainly meritless,"
> and post-conviction counsel's unreasonable failure to raise that claim earlier
> establishes "good cause," the Court should reject the magistrate judge's
> recommendation and grant Mr. Fay's motion to amend the petition and stay the
> proceedings under *Rhines* ...................................................................................................... 4

> A.   Legal principles ................................................................................................ 4

>      1.   "Mixed" petitions and motions to amend and stay generally .................... 4

>      2.   Standards governing motions to amend ..................................................... 5

>      3.   The "not plainly meritless" and "good cause" *Rhines* criteria ................... 6

> B.   Because the IAC Claim relates back to the Petition and Mr. Fay satisfies all
>      three *Rhines* criteria, the Court should grant leave to amend the Petition to
>      add the IAC Claim and should then stay the habeas proceeding and hold the
>      Petition in abeyance under *Rhines* ............................................................................ 9

>      1.   The IAC Claim far exceeds the low bar of being "not plainly
>           meritless" ............................................................................................ 10

>      2.   Post-conviction counsel's unreasonable failure to raise the IAC
>           Claim in a state-court CPL § 440.10 motion before coming to
>           federal court makes out "good cause" for the non-exhaustion of
>           this claim ............................................................................................. 12

>      3.   The recommendations in the Second R&R were based on several
>           factual and legal errors that this Court should reject ........................... 14

CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Aessa v. Annetts*,
No. 06 CV 5830 (ARR), 2006 WL 3780392 (E.D.N.Y. Dec. 21, 2006) ................................ 7

*Boyd v. Jones*,
No. CIV. 05-73792-DT, 2005 WL 2656639 (E.D. Mich. Oct. 14, 2005) ............................ 7

*Brims v. Collado*,
No. 18CV6973, 2022 WL 17669950 (S.D.N.Y. Dec. 14, 2022) ............................................ 6

*Brown v. Ebert*,
No. 05 CIV. 5579, 2006 WL 1273830 (S.D.N.Y. May 9, 2006) ............................................ 9

*Bryant v. Greiner*,
No. 02CIV.6121, 2006 WL 1675938 (S.D.N.Y. June 15, 2006) ........................................ 6, 8

*Clancy v. Phillips*,
No. 04CV4343KMK, 2005 WL 1560485 (S.D.N.Y. July 1, 2005) ...................................... 5

*Clarke v. Griffin*,
No. 13-CV-4812, 2016 WL 206476 (S.D.N.Y. Jan. 14, 2016) .............................................. 4

*Cone v. Bell*,
556 U.S. 449 (2009) ........................................................................................................ 16

*Cuevas v. United States*,
No. 10-CV-5959, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013) ............................................ 5

*Davidson v. Capra*,
No. 15CIV9840, 2016 WL 6248449 (S.D.N.Y. Oct. 26, 2016) ............................................ 3

*Easley v. Cromartie*,
532 U.S. 234 (2001) ............................................................................................................ 2

*Edwards v. Carpenter*,
529 U.S. 446 (2000) ............................................................................................................ 7

*Gersten v. Senkowski*,
426 F.3d 588 (2d Cir. 2005) ............................................................................................ 10

*Gomez v. United States*,
490 U.S. 858 (1989) ........................................................................................................ 2, 3

*Hinton v. Alabama*,
571 U.S. 263 (2014) ........................................................................................................ 10

*In re U.S. Healthcare*,
   159 F.3d 142 (3d Cir. 1998)................................................................................. 3

*In re United States*,
   10 F.3d 931 (2d Cir. 1993)................................................................................... 2

*Inoa v. Smith*,
   No. 16CV2708, 2018 WL 4109102 (S.D.N.Y. Aug. 29, 2018) ......................... 4

*James v. Keyser*,
   No. 120CV03468, 2020 WL 7496474 (S.D.N.Y. Dec. 21, 2020) ...................... 5

*Jones v. Barnes*,
   463 U.S. 745 (1983)......................................................................................... 15

*Linares v. People of State of N.Y.*,
   No. 04-CV-2973, 2008 WL 2115231 (S.D.N.Y. May 14, 2008) ...................... 6

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ......................................................................... 2

*Martinez v. Ryan*,
   566 U.S. 1 (2012)............................................................................................ 11

*Mayle v. Felix*,
   545 U.S. 644 (2005)........................................................................................... 5

*Mayo v. Henderson*,
   13 F.3d 528 (2d Cir. 1994)............................................................................... 15

*McNeil v. Capra*,
   No. 13-CV-3048, 2015 WL 4719697 (S.D.N.Y. 2015)..................................... 3

*Megnath v. Royce*,
   No. 20-CV-1305(EK)(LB), 2021 WL 4502471 (E.D.N.Y. Sept. 30, 2021)..................... 6, 11

*Murray v. Carrier*,
   477 U.S. 478 (1986)....................................................................................... 7, 9

*Nickels v. Conway*,
   No. 10-CV-0413, 2013 WL 4403922 (W.D.N.Y. Aug. 15, 2013) .................. 5, 7

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005)........................................................................................... 8

*People v. Zappulla*,
   103 A.D.3d 759 (2d Dep't 2013) ..................................................................... 13

iv

*Ramchair v. Conway,*
  No. 04 CV 4241, 2005 WL 2786975 (E.D.N.Y. Oct. 26, 2005) ........................... 6, 7, 8, 9, 14

*Ramdeo v. Phillips,*
  No. 04-CV-1157, 2006 WL 297462 (E.D.N.Y. Feb. 8, 2006) ............................................ 5, 6

*Ramirez v. Superintendent of Shawangunk Corr. Facility,*
  No. 17CIV7185, 2019 WL 3714992 (S.D.N.Y. Aug. 6, 2019) .................................. 1, 3, 4, 6

*Rhines v. Weber,*
  544 U.S. 269 (2005).................................................................................................. *passim*

*Rhines v. Weber,*
  408 F. Supp. 2d 844 (D.S.D. 2005) ...................................................................................... 7, 8

*Rodriguez v. Vance,*
  No. 12 CIV 5418, 2013 WL 5372774 (S.D.N.Y. Sept. 6, 2013) ............................................ 3

*Saunders v. Comm'r,*
  No. 3:13-CV-626 (MPS), 2016 WL 3812444 (D. Conn. July 13, 2016).................................. 7

*Simmons v. Sheahan,*
  No. 14 CIV 3998, 2015 WL 5146149 (S.D.N.Y. Aug. 31, 2015) ........................................... 5

*Slayton v. Am. Exp. Co.,*
  460 F.3d 215 (2d Cir. 2006)...................................................................................................... 3

*Smith v. Graham,*
  No. 17-CV-379-LJV-JJM, 2022 WL 673122 (W.D.N.Y. Mar. 7, 2022) ............................... 3

*Strickland v. Washington,*
  466 U.S. 668 (1984)............................................................................................................ *passim*

*Thompson v. Keane,*
  No. 95 Civ. 2442, 1996 WL 229887 (S.D.N.Y. May 6, 1996)................................................. 2

*Tineo-Santos v. Piccolo,*
  No. 19CV5038, 2021 WL 266561 (S.D.N.Y. Jan. 27, 2021) .................................................. 5

*United States v. Nolan,*
  956 F.3d 71 (2d Cir. 2020)...................................................................................................... 10

*Usher v. Ercole,*
  710 F. Supp. 2d 287 (E.D.N.Y. 2010) .................................................................................... 10

*Vasquez v. Parrott,*
  397 F. Supp. 2d 452 (S.D.N.Y. 2005)................................................................................. 9, 14

*Wallace v. Artus*,
    No. 05 CIV. 0567, 2006 WL 738154 (S.D.N.Y. Mar. 23, 2006) ............................................ 7

*Whitley v. Ercole*,
    509 F. Supp. 2d 410 (S.D.N.Y. 2007) ........................................................................................ 8

*Williams v. Beemiller, Inc.*,
    527 F.3d 259 (2d Cir. 2008) ................................................................................................. 2, 3

*Wright v. Poole*,
    No. 02-CV-8669, 2012 WL 4478393 (S.D.N.Y. Sept. 28, 2012) ............................................ 3

**Statutes**

28 U.S.C. § 2254 ................................................................................................................................ 4

28 U.S.C. § 636 ................................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 72 ...................................................................................................................... 1, 2, 3

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72, Petitioner George Fay respectfully objects to the Second R&R, which recommends denying Mr. Fay's motion for leave to amend his habeas corpus petition to add a claim that his trial counsel provided ineffective assistance of counsel and for an order staying these habeas proceedings while Fay returns to state court to exhaust that ineffectiveness claim, in accordance with *Rhines v. Weber*, 544 U.S. 269 (2005). As discussed below, this Court, applying the required *de novo* standard of review, should reject several errors in the Second R&R and grant Mr. Fay's motion.

The relevant facts are set forth in the declaration of Joel B. Rudin, counsel to Mr. Fay, which is incorporated herein by reference.

## STANDARD OF REVIEW

**This Court should review the Second R&R *de novo*, because denying Mr. Fay's motion would forever bar federal review of the unexhausted IAC Claim, and also because the Second R&R fails to address our main arguments**

When reviewing a report and recommendation on a "Dispositive Motion[]" or "Prisoner Petition[]," the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b), (b)(3). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Ramirez v. Superintendent of Shawangunk Corr. Facility*, No. 17CIV7185, 2019 WL 3714992, at *1 (S.D.N.Y. Aug. 6, 2019) (Engelmayer, J.) (quoting 28 U.S.C. § 636(b)(1)(C)).

Where a report and recommendation concerns a "Nondispositive Matter[]," the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "An order is 'clearly erroneous' if

the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (Sullivan, then-D.J.) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "An order is 'contrary to law' 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Thompson v. Keane*, No. 95 Civ. 2442, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (Stein, J.)).

Here, the standard of review should be *de novo*. First, where there is ambiguity about the level of deference to be applied, review should be *de novo* to avoid potentially giving improper weight to the decision of a non–Article III judge. *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008) ("Given the possible constitutional implications of delegating Article III judges' duties to magistrate judges," courts should construe the rules authorizing delegation to magistrates "narrowly," so as to "'avoid[] constitutional issues.'" (quoting *In re United States*, 10 F.3d 931, 934 n.4 (2d Cir. 1993))). *See generally Gomez v. United States*, 490 U.S. 858, 864 (1989) (narrowly construing the Federal Magistrate's Act consistent with the principle that courts should "avoid an interpretation of a federal statute that engenders constitutional issues").

Second, this motion should be considered dispositive because the practical effect of denying it would be to dismiss, and forever foreclose federal review of, the claim that is sought to be added to the petition. To determine whether a matter is dispositive under Rule 72, courts must "analyze[] the practical effect of the challenged action." *Williams*, 527 F.3d at 265. If a ruling would "fully dispose [ ] of a claim or defense," making it "functionally equivalent to an order of dismissal," the matter should be deemed dispositive. *Id.* (internal quotation marks omitted) (alterations in original). In *Williams*, the Second Circuit held that, because an order remanding a matter to state court "determine[s] the fundamental question of whether a case could

2

proceed in a federal court," it is "dispositive" and thus "subject to *de novo* review under Rule 72." *Id.* at 266 (quoting *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998)).

In line with this functional approach, courts in this Circuit—including this Court in *Ramirez*—have applied *de novo* review to magistrates' recommendations on motions to amend habeas petitions and stay the proceedings under *Rhines*, since the denial of such a motion is "analogous to a dismissal on the pleadings." *McNeil v. Capra*, No. 13-CV-3048, 2015 WL 4719697, at *3 (S.D.N.Y. 2015) (Abrams, J.) (quoting *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 227-28 (2d Cir. 2006)); *see Ramirez*, 2019 WL 3714992, at *1-2 (Engelmayer, J.); *Rodriguez v. Vance*, No. 12 CIV. 5418, 2013 WL 5372774, at *1 (S.D.N.Y. Sept. 6, 2013) (Preska, J.); *Wright v. Poole*, No. 02-CV-8669, 2012 WL 4478393, at *1-2 (S.D.N.Y. Sept. 28, 2012) (Karas, J.); *Smith v. Graham*, No. 17-CV-379-LJV-JJM, 2022 WL 673122, at *1 (W.D.N.Y. Mar. 7, 2022). While, in *Davidson v. Capra*, No. 15CIV9840, 2016 WL 6248449, at *1 (S.D.N.Y. Oct. 26, 2016), Judge Schofield applied the deferential Rule 72(a) standard, she did so without any discussion after receiving briefing by *pro se* litigant. Indeed, Magistrate Judge Cave assumed in the Second R&R that any objections would be reviewed under "Rule 72(b)"—which requires *de novo* review—rather than Rule 72(a). *See* Doc. 51 at 31.

*De novo* review is also particularly appropriate here because Mr. Fay was limited to three pages to present his motion to the magistrate judge, who needed 30 pages to explain her decision. To curtail Mr. Fay's motion so significantly, and then to apply deferential rather than *de novo* review to the magistrate's recommendation, would be unfair. We also submit that deferential review would violate not only the intent of Congress in the Federal Magistrates Act but also Article III, for the reasons set forth above. As in *Gomez*, this Court should avoid the serious Article III delegation issue by construing the statute to require *de novo* review.

Finally, as discussed further below, the Second R&R fails to address several of our key factual and legal arguments concerning the application of the *Rhines* criteria, which is an independent reason that the Court's *Rhines* analysis of those arguments should be *de novo*.

However, even under the less favorable standard, the objected-to portions of the Second R&R should be rejected because, as argued below, the magistrate judge's legal analysis is contrary to law and her factual analysis is clearly erroneous.

## ARGUMENT

**Because the IAC Claim relates back to the Petition and is not "plainly meritless," and post-conviction counsel's unreasonable failure to raise that claim earlier establishes "good cause," the Court should reject the magistrate judge's recommendation and grant Mr. Fay's motion to amend the petition and stay the proceedings under *Rhines***

A.   **Legal principles**

1.   **"Mixed" petitions and motions to amend and stay generally**

"A state prisoner seeking to vacate his conviction on federal constitutional grounds must first exhaust all available state remedies." *Ramirez*, 2019 WL 3714992, at *2 (citing 28 U.S.C. § 2254(b)). Where a habeas petition is "mixed"—i.e., "contains both exhausted and unexhausted claims"—the court may stay the proceedings and hold the petition in abeyance "to allow the petitioner to present his unexhausted claims to the state court in the first instance." *Inoa v. Smith*, No. 16CV2708, 2018 WL 4109102, at *1 (S.D.N.Y. Aug. 29, 2018) (Cott, M.J.) (quoting *Rhines v. Weber*, 544 U.S. 269, 271-72 (2005)). A *Rhines* "stay and abeyance" may be granted only if "(1) good cause exists for the petitioner's failure to exhaust . . . ; (2) the unexhausted claims are not plainly meritless[;] and (3) the petitioner has not engaged in intentionally dilatory tactics." *Id.* (quoting *Clarke v. Griffin*, No. 13-CV-4812, 2016 WL 206476, at *3 (S.D.N.Y. Jan. 14, 2016) (McCarthy, M.J.); and citing *Rhines*, 544 U.S. at 277-78).

4

Where a pending petition contains only exhausted claims, but the petitioner wishes to add unexhausted claims, he may bring a "stay and abeyance application[]" under *Rhines* "with a simultaneous motion to amend" the petition to add the unexhausted claim. *Simmons v. Sheahan*, No. 14 CIV. 3998, 2015 WL 5146149, at *4 (S.D.N.Y. Aug. 31, 2015) (McCarthy, M.J.); *see also James v. Keyser*, No. 120CV03468, 2020 WL 7496474, at *4 & n.9 (S.D.N.Y. Dec. 21, 2020) (Aaron, M.J.) (instructing petitioner to file a motion to amend, at which point the court would consider request for a *Rhine*s stay); *Clancy v. Phillips*, No. 04CV4343KMK, 2005 WL 1560485, at *2 (S.D.N.Y. July 1, 2005) (Karas, J.) (same).

### 2.    Standards governing motions to amend

"A motion to amend a habeas petition is governed by Federal Rule of Civil Procedure 15(a)." *Tineo-Santos v. Piccolo*, No. 19CV5038, 2021 WL 266561, at *2 (S.D.N.Y. Jan. 27, 2021) (Cott, M.J.). Where the one-year habeas limitations period has run, a claim may be added to a petition only if it "would 'relate back to the filing date of the original [petition].'" *Id.* at *3 (quoting *Mayle v. Felix*, 545 U.S. 644, 648 (2005)). "For new claims to relate back, they must share 'a common core of operative facts' with the original petition." *Id.* (quoting *Mayle*, 545 U.S. at 664). A new claim relates back when it alleges that counsel was ineffective "in relation to the preservation of [a claim] asserted in the original Petition." *Nickels v. Conway*, No. 10-CV-0413, 2013 WL 4403922, at *3 (W.D.N.Y. Aug. 15, 2013); *accord Ramdeo v. Phillips*, No. 04-CV-1157, 2006 WL 297462, at *1-4 (E.D.N.Y. Feb. 8, 2006) (Townes, J.).

"[L]eave to amend may be denied 'where the amendment would be futile.'" *Tineo-Santos*, 2021 WL 266561, at *2 (quoting *Cuevas v. United States*, No. 10-CV-5959, 2013 WL 655082, at *6 (S.D.N.Y. Feb. 22, 2013) (Engelmayer, J.)). "[I]f th[e] Court is not prepared to

grant petitioner a stay" under *Rhines*, then "it would be futile to grant leave to amend the petition." *Ramdeo*, 2006 WL 297462, at *4.

### 3.  The "not plainly meritless" and "good cause" *Rhines* criteria

The second *Rhines* requirement, permitting a stay only if the unexhausted claim is not "plainly meritless," *Rhines*, 544 U.S. at 277, is a forgiving standard, as the language of *Rhines* suggests. It is "a fairly modest hurdle," defeating a *Rhines* motion only if "it is perfectly clear that the petitioner has no hope of prevailing" on the unexhausted claim. *Megnath v. Royce*, No. 20-CV-1305(EK)(LB), 2021 WL 4502471, at *4 (E.D.N.Y. Sept. 30, 2021) (quoting *Linares v. People of State of N.Y.*, No. 04-CV-2973, 2008 WL 2115231, at *2 (S.D.N.Y. May 14, 2008) (Wood, J.)); *see Brims v. Collado*, No. 18CV6973, 2022 WL 17669950, at *1 (S.D.N.Y. Dec. 14, 2022) (Karas, J.) (same); *Bryant v. Greiner*, No. 02CIV.6121, 2006 WL 1675938, at *5 (S.D.N.Y. June 15, 2006) (Ellis, M.J.) ("The 'plainly meritless' standard sets a low bar . . . .").

Regarding the "good cause" requirement, "[t]here is disagreement among courts as to what constitutes 'good cause' under *Rhines*; the Second Circuit has yet to address this question." *Ramirez*, 2019 WL 3714992, at *2. But the majority view is that a petitioner establishes "good cause" for not exhausting a claim by showing that his post-conviction lawyer unreasonably erred in not previously raising the claim—a showing that does not require establishing the lawyer's constitutional ineffectiveness under *Strickland v. Washington*, 466 U.S. 668 (1984).

In the leading case *Ramchair v. Conway*, appellate counsel failed to raise a meritorious argument challenging the trial court's denial of a mistrial motion, making it unexhausted for federal habeas purposes. No. 04 CV 4241, 2005 WL 2786975, at *16 (E.D.N.Y. Oct. 26, 2005) (Gleeson, J.). Judge Gleeson granted a *Rhines* stay while the petitioner raised the claim in a *coram nobis* petition, finding good cause, without referencing *Strickland*, because "[t]here [wa]s

no reason to expect Ramchair to understand that his appellate counsel should have complained" about that issue. *Id.* at *18; *accord Saunders v. Comm'r*, No. 3:13-CV-626 (MPS), 2016 WL 3812444, at *14 (D. Conn. July 13, 2016) (finding good cause for failure to exhaust certain claims via state habeas petition, without conducting any *Strickland* analysis, since "petitioner has alleged that his failure to exhaust some of his claims was due to ineffective assistance of habeas counsel"); *Wallace v. Artus*, No. 05 CIV. 0567, 2006 WL 738154, at *4 (S.D.N.Y. Mar. 23, 2006) (Francis, M.J.) ("agree[ing]" with *Ramchair*); *Aessa v. Annetts*, No. 06 CV 5830 (ARR), 2006 WL 3780392, at *2 (E.D.N.Y. Dec. 21, 2006) (same); *Nickels*, 2013 WL 4403922, at *5 (same); *Boyd v. Jones*, No. CIV. 05-73792-DT, 2005 WL 2656639, at *4 (E.D. Mich. Oct. 14, 2005) ("[A]ppellate counsel's failure to raise the[ unexhausted] claims on Petitioner's direct appeal constitutes good cause for his failure to exhaust these claims with the state courts.").

The analysis of the district court in *Rhines*, which had to decide whether to grant a stay after the case was remanded by the Supreme Court, is particularly instructive. The respondent argued that courts "should apply the same principles to 'good cause' in the [*Rhines*] stay and abey context as has been applied to show 'cause' under the 'cause and prejudice' standard in the procedural default arena; namely, that ineffective assistance of post-conviction counsel is not grounds for relief from a procedural default unless it violates the Federal Constitution." *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D.S.D. 2005) (citing *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986)). However, the district court *rejected* this argument. It reasoned that, while "[t]he procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,'" such concerns do not apply in the *Rhines* context. *Id.* (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). While "[t]he failure of a habeas petitioner to meet the State's procedural requirements deprives the state courts of an opportunity

to reach the issues in the first instance," the opposite is true in the *Rhines* context, in which "the principles of comity and federalism [are] given full recognition," because the whole point of a *Rhines* stay is to "allow[ the petitioner] to exhaust his unexhausted claims in state court." *Id.* at 848-49; *see also Bryant*, 2006 WL 1675938, at *5 (noting that the *Rhines* procedure "maximizes the opportunity for the state court to make a determination in the first instance").

Additionally, the Supreme Court's own decisions "suggest[] a more expansive definition of 'good cause.'" *Rhines*, 408 F. Supp. 2d at 849. Specifically, the Court has held that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" under *Rhines* for filing a protective federal habeas petition without first exhausting his claims. *Id.* at 847 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)). The *Rhines* district court reasoned that "[r]easonable confusion on the part of a petitioner is less stringent than acts that have been found sufficient to establish cause for procedural default," and therefore the *Rhines* "good cause" standard must be distinct from, and more forgiving than, the "cause" standard for excusing a procedural default. *Id.* at 849; *accord Whitley v. Ercole*, 509 F. Supp. 2d 410, 419 (S.D.N.Y. 2007) (Hellerstein, J.); *Bryant*, 2006 WL 1675938, at *5.

Applying this analysis, the *Rhines* district court found good cause. It reasoned that there was "nothing in the record to indicate that Rhines's allegations of ineffective assistance of counsel are frivolous or that Rhines should have been aware that his post-conviction counsel should have raised the issues on appeal." *Rhines*, 408 F. Supp. 2d at 849. Further, it pointed out that "[p]ermitting Rhines to return to state court to exhaust his remedies . . . complie[d] with the principles of comity and federalism that underlie the exhaustion doctrine," which was "not intended to unreasonably impair the petitioner's right to relief." *Id.* (citing *Ramchair*, 2005 WL

2786975, at *16); *see Brown v. Ebert*, No. 05 CIV. 5579, 2006 WL 1273830, at *3 (S.D.N.Y.

May 9, 2006) (Fox, M.J.) (approvingly citing the district court's opinion in *Rhines*).

While *Vasquez v. Parrott*, relied on by Magistrate Cave, suggests that counsel's

omissions can establish good cause under *Rhines* only if separately alleged in a *Strickland* claim,

*see* 397 F. Supp. 2d 452, 464 (S.D.N.Y. 2005) (Koeltl, J.), that portion of *Vasquez* is dicta and an

incorrect outlier. Considering a *pro se* petitioner's Rule 72 objections, the court denied a *Rhines*

stay because the unexhausted claim was "meritless"; it then opined, in dictum, that the petitioner

also could not show "good cause" because he had not made a separate *Strickland* claim raising

his lawyer's failure to raise the unexhausted claim. *Id.* The only support for this view was a "*Cf.*"

citation of the rule that ineffectiveness "only amounts to sufficient cause to excuse *a procedural*

*default*" if it meets the *Strickland* standard and "has itself been exhausted." *Id.* (emphasis added)

(citing *Murray*, 477 U.S. at 485-92). But the district court did not acknowledge *Ramchair* or

consider the persuasive arguments discussed above that the *Rhines* "good cause" requirement is

less demanding than the *Murray* requirement for excusing procedural defaults. Evidently the *pro*

*se* petitioner did not make that distinction in his briefing.

**B.      Because the IAC Claim relates back to the Petition and Mr. Fay satisfies all three**
**         *Rhines* criteria, the Court should grant leave to amend the Petition to add the IAC**
**         Claim and should then stay the habeas proceeding and hold the Petition in abeyance**
**         under *Rhines***

In line with the case law cited above, Judge Cave concluded that the IAC Claim "relate[s]

back to the Petition," because that claim is based on the inadequacy of the expert-witness proffer

that was the subject of the Sixth Amendment claim in the Petition. Doc. 51 at 20. We agree with

this conclusion, and this Court should adopt it.

Judge Cave also concluded, however, that although the IAC Claim relates back to the

Petition, amending the Petition to include that claim would be futile, because Fay cannot satisfy

9

two of the three *Rhines* criteria. We agree with Judge Cave's conclusion, conceded by Respondent, that Fay "does not appear to have been . . . deliberately dilatory," and so he satisfies that *Rhines* requirement. *Id.* at 21 (quoting Doc. 40 at 4). We object, however, to Judge Cave's conclusions that Fay has not satisfied the "not plainly meritless" or "good cause" requirements. As we show below, the IAC Claim easily passes the forgiving test of being "not plainly meritless," and the unreasonable failure of Mr. Fay's post-conviction counsel to raise the IAC Claim before now makes out "good cause."

### 1.      The IAC Claim far exceeds the low bar of being "not plainly meritless"

"[T]o prevail on a Sixth Amendment ineffectiveness claim, a petitioner must prove (1) that counsel's representation 'fell below an objective standard of reasonableness' measured under 'prevailing professional norms,' . . . and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688, 694).

With respect to the first *Strickland* prong, "counsel has a duty to make reasonable investigations," and "[i]n sexual abuse cases . . . , the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel." *Id.* at 607; *see also Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (finding trial counsel ineffective where he failed to take the basic steps required to retain a necessary expert); *United States v. Nolan*, 956 F.3d 71, 81-82 (2d Cir. 2020) (finding trial counsel ineffective where "eyewitness testimony was sufficiently unreliable in ways not readily apparent to a lay jury" and "[c]ounsel therefore had a duty at least to consult an expert and consider whether to call her to the stand"); *Usher v. Ercole*, 710 F. Supp. 2d 287, 304 (E.D.N.Y. 2010) (finding trial counsel ineffective where his "failure to

educate himself about" medical and scientific issues prevented him from calling necessary expert witness). Additionally, the failure to preserve issues for appeal or other post-conviction challenge can render an attorney ineffective, for "[e]ffective trial counsel preserves claims to be considered on appeal, . . . and in federal habeas proceedings." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012).

Here, it cannot be said that the IAC Claim is "plainly meritless"—i.e., that "it is perfectly clear that [Fay] has no hope of prevailing" on the claim. *Megnath*, 2021 WL 4502471, at *4. Trial counsel never conducted the investigation necessary to learn, and certainly never presented to the court, the information about sexsomnia that we readily uncovered. *See* Rudin Decl. ¶¶ 17-20. Although trial counsel rightly perceived that an expert might be able to provide scientific information that would assist the lay jurors in assessing SD's and Fay's testimony, and thus contacted Dr. Thorpy, he then failed to take the necessary steps to understand and proffer the powerful testimony that Dr. Thorpy could have given about sexsomnia and its exacerbation by alcohol—namely, that SD could have honestly believed Fay had had sex with her while she was asleep, while Fay also honestly believed he had been awake during the sexual encounter, thus negating his *mens rea*. Indeed, according to Dr. Thorpy's unrebutted recent statements, trial counsel never even asked Dr. Thorpy to review any of the materials from the case, let alone have him opine on them. *Id.* ¶ 22.

When counsel did belatedly tell the trial court he wished to call Dr. Thorpy, he was unable to describe Dr. Thorpy's expected testimony in any detail or offer any of the many scientific and legal authorities that supported such testimony—having, according to Dr. Thorpy's unrebutted recent statements, not even retained or prepared Dr. Thorpy to testify at trial. *Id.* No reasonable lawyer would conduct himself in this manner. But this Court does not have to go that

11

far; it need only determine whether Fay has *no chance* of showing that his lawyer acted

unreasonably. Clearly Fay has exceeded that low bar.

Nor is it the case that Fay has *no chance* of establishing, under the second *Strickland*

prong, that Dr. Thorpy's testimony probably would have led to a better trial outcome. Had trial

counsel proffered the testimony we have described above, supported by the scientific and legal

literature cited in the Rudin Declaration at ¶¶ 17-20, the testimony likely would have been (and

certainly should have been) admitted, and the defense argument to the jury in summation would

have been completely different—and much stronger. Instead of having to convince the jury to

disbelieve SD, whose credibility was not seriously impeached, the defense could have argued

that an acquittal was consistent with both SD and Fay giving subjectively honest testimony. That

likely would have created at least a reasonable doubt about Fay's guilt. At this stage, it cannot be

said that Fay has no hope of showing that Dr. Thorpy's testimony probably would have led to a

more favorable outcome.

### 2. Post-conviction counsel's unreasonable failure to raise the IAC Claim in a state-court CPL § 440.10 motion before coming to federal court makes out "good cause" for the non-exhaustion of this claim

As shown above, post-conviction counsel's unreasonable failure to raise a claim in state

court can make out good cause under *Rhines* for the petitioner's failure to exhaust that claim.

Here, counsel's failure to raise the IAC Claim in a CPL § 440.10 motion before coming to

federal court was such an unreasonable omission. The Second R&R misconstrues the law by

focusing on counsel's omission of such a claim from Fay's direct appeal as opposed to his failure

to file a collateral attack on the conviction via CPL § 440.10.

Counsel's error is obvious when one considers the low likelihood that, after Fay lost his

direct appeal for failing to preserve Fay's Sixth Amendment claim, a federal court applying

AEDPA would reject the state court's procedural decision. The First R&R's procedural-default analysis shows the weakness of the approach that habeas counsel pursued while foregoing a 440 motion. *See* Doc. 31 at 26-38. Indeed, in light of trial counsel's procedural default, the only likely way to get a federal court to consider the constitutional significance of Dr. Thorpy's preclusion from Fay's trial was to argue that trial counsel's ineffectiveness was to blame. But that could happen only if the IAC Claim was first exhausted via a CPL § 440.10 motion in state court. (The IAC Claim would *have to* have been raised in a 440 motion, not on direct appeal, because it relied on material outside the trial record, *see People v. Zappulla*, 103 A.D.3d 759, 759 (2d Dep't 2013)—namely, statements from Dr. Thorpy about his proposed testimony and his interactions (or lack thereof) with trial counsel, statements from trial counsel about his actions and omissions regarding Dr. Thorpy, and scientific and legal materials about sexsomnia.)

Second, even if a federal court were somehow to excuse the procedural-default problem, there was essentially no way to show, without first bringing a 440 motion to expand the record, why the preclusion of Dr. Thorpy was prejudicial. This is because trial counsel's expert proffer contained virtually no detail about the expected testimony. There was thus no way for post-conviction counsel to make a persuasive argument in the Petition, like the one we have made here, about *what* testimony Dr. Thorpy would have given, how strongly it was supported by the scientific literature, and *why* that testimony would have affected the outcome of the trial.

Third, it would have been still clearer to post-conviction counsel that a 440 motion was in order had he first contacted Dr. Thorpy and learned that trial counsel had never retained Dr. Thorpy or prepared him to testify at trial, despite telling the trial court he wished to call Dr. Thorpy the next day, which spoke powerfully to trial counsel's deficiencies.

Finally, knowing that Fay had a potential trial ineffectiveness claim and the right to file only one habeas petition, it was unreasonable for post-conviction counsel not only not to adequately investigate the IAC Claim but also to fail to exhaust it in state court under CPL § 440.10 so that Fay could eventually raise it in a habeas petition.

In light of the above, it was unreasonable of post-conviction counsel to go straight to federal court to file a habeas petition that was likely to lose, instead of first exhausting the meritorious IAC Claim in a 440 motion. Since "[t]here [wa]s no reason to expect [Fay] to understand that [counsel] should have" pursued the 440 motion first, counsel's failures make out good cause. *Ramchair*, 2005 WL 2786975, at *18.

### 3.    The recommendations in the Second R&R were based on several factual and legal errors that this Court should reject

Judge Cave concluded that Fay's proposed amendment to the Petition, adding the IAC Claim, would be futile because he has not satisfied the "not plainly meritless" and "good cause" requirements for a *Rhines* stay.

Turning first to the recommended finding of lack of "good cause," Judge Cave based this on two errors of law: first, that post-conviction counsel's ineffectiveness cannot make out good cause under *Rhines* unless it is a separate claim for relief in the habeas petition, Doc. 51 at 23 (citing *Vasquez*, 397 F. Supp. 2d at 464), and second, that Fay cannot show that post-conviction counsel was ineffective for omitting the IAC Claim from Fay's *direct appeal*, under the highly deferential standard that applies for assessing ineffectiveness of appellate counsel, *id.* at 23-25.

As we have shown, the majority view in this Circuit is that post-conviction counsel's unreasonable failure to exhaust a claim makes out good cause, without any need to establish *Strickland*-level ineffectiveness in a standalone claim. The single case Judge Cave relied on in concluding otherwise, *Vasquez*, was incorrectly decided, as we have shown. Judge Cave never

14

analyzed the majority view from *Ramchair* and the district court's persuasively reasoned decision in *Rhines*. This Court should follow the majority view.

Second, Judge Cave, misconstruing our argument, analyzed whether counsel provided ineffective assistance on *direct appeal*, but the law that would govern such a claim—which we are not making—doesn't apply in assessing the strategic decisions of counsel handling a collateral attack. The difficult standard the defense must meet to show ineffectiveness on direct appeal is whether appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *See* Doc. 51 at 24 (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). But that standard, erroneously applied by Judge Cave, reflects considerations particular to the direct-appeal context. Courts generally defer to appellate counsel's strategic choice of appeal issues because "page limits on briefs are widely imposed," and "[t]he mind of an appellate judge" is less receptive to arguments of error "as the number of assigned errors increases." *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983).

However, our argument, clearly set forth in our letter motion, Doc. 48 at 3, is not that counsel should have raised the IAC Claim on direct appeal. Rather, it is that, *having already lost the direct appeal* based in part on a preservation holding that likely defeated Fay's Sixth Amendment habeas claim on procedural grounds, counsel should have raised the IAC Claim in a 440 motion in state court before seeking federal habeas relief. In fact, raising the IAC Claim on direct appeal would have been *improper* because it relied on non-record materials. The Second R&R's analysis missed these arguments while applying the wrong legal standard to Fay's claim.

Regarding *Rhines*'s "not plainly meritless" requirement, Judge Cave again failed to consider our main arguments and misapplied the law. She concluded that Dr. Thorpy's testimony would not likely have changed the outcome of Fay's trial, deferring to the Appellate Division's

rejection of Fay's insufficient-evidence and weight-of-the evidence points, Doc. 51 at 25, but she failed to consider that the Appellate Division reviewed *only the trial record*, which contained only trial counsel's inadequate proffer about the proposed defense. In analyzing whether Dr. Thorpy's sexsomnia testimony likely would have affected the outcome of the trial, Judge Cave was required to consider Fay's present proffer, not the inadequate record made by a lawyer Fay contends was ineffective.

Moreover, Judge Cave's focus on the Appellate Division's legal-sufficiency and weight-of-the-evidence findings also was an error of law. Such findings do not mean Dr. Thorpy's testimony creates no reasonable probability of a more favorable outcome—if they did, the *Strickland* prejudice and *Brady* materiality standards would be meaningless. That there was an adequate basis for a jury to convict does not mean that a reasonable jury, receiving expert testimony that the trial judge precluded, could not have arrived at a more favorable verdict. Indeed, the reasonable probability of just "one juror" dissenting and refusing to convict would suffice to show prejudice. *Cone v. Bell*, 556 U.S. 449, 452 (2009). Nowhere in the Second R&R does Judge Cave analyze why, *on an expanded record* containing expert testimony along the lines we have set forth, a more favorable outcome at trial was not reasonably likely.

Finally, the Appellate Division did not "reject[] the theory on which Dr. Thorp[y]'s testimony would have been based," which the Second R&R characterizes as the theory that SD mistook Fay for Jack Slye "while in a semiconscious state resulting from intoxication and fatigue." Doc. 51 at 26 (internal quotation marks omitted). Dr. Thorpy's testimony would have supported a different theory—not that SD was "semiconscious" but that she honestly perceived herself to be asleep while Fay honestly perceived her to be awake, thus negating Fay's *mens rea*. This defense theory would have been powerfully supported by scientific evidence of the

16

phenomenon of sexsomnia, rather than vague speculation about SD's level of consciousness. The Appellate Division never rejected the theory on which Dr. Thorpy's testimony would have been based because that theory was not presented at trial. The Second R&R, having misperceived the theory that Dr. Thorpy's testimony would have supported, does not grapple with this theory.

In sum, neither the Second R&R's "good cause" analysis nor its "not plainly meritless" analysis addresses the legal and factual arguments that support our motion. Whether reviewed *de novo* or under the "contrary to law"/"clearly erroneous" standard, the proposed findings concerning these two *Rhines* criteria should be rejected as legally and factually erroneous.

## CONCLUSION

For the reasons set forth above, the Court should reject the objected-to portions of the Second R&R, grant Fay's motion for leave to amend the Petition to add the IAC Claim and for an order staying the habeas proceeding and holding the Petition in abeyance while Fay exhausts the IAC Claim in a CPL § 440.10 motion in state court, and grant such other and further relief as would be just and proper or in the interest of justice.

/s/
Joel B. Rudin
Law Offices of Joel B. Rudin, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
(212) 980-2968 (fax)
jbrudin@rudinlaw.com

*Attorney for Petitioner George Fay*

Jacob Loup
(Of counsel and on the memorandum)

Dated:       New York, New York
             July 7, 2023